## JACKIE C. PARKER *v.* STATE OF MARYLAND

[No. 184, September Term, 1967.]

---

*Decided  April 29, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, and ORTH, JJ.

*D. William Simpson* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Alfred T. Truitt, Jr., State's Attorney for Wicomico County,* and *William B. Yates, II, State's Attorney for Dorchester County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant was convicted on May 16, 1967 by a jury in the Circuit Court for Wicomico County of first degree murder and robbery. He was sentenced to life imprisonment on the murder charge and to a twenty-year term under the robbery conviction, to run consecutively with the life sentence. His primary contention on this appeal is that the court erred in instructing the jury on the issue of burden of proof as to appellant's defense of insanity.

There was evidence adduced at the trial tending to show that at approximately 9:00 p.m. on December 30, 1966, appellant entered the grocery store of William Arnie in Cambridge and asked Arnie, whom he knew, to go to the back of the store with him; that a shot went off and Arnie called to his son, "Run Johnnie, run"; that a second shot went off and Johnnie ran from the store to call the police; that Arnie came out of the store holding his stomach and stated to a witness, "Oh my God, Wayne, the Parker boy shot me"; that appellant then ran out of the store with a gun in his hand and fled in the direction of his apartment; that shortly thereafter two officers of the Cambridge Police Department went to appellant's apartment and found him lying across a bed; and that the officers discovered a gun in a hamper in the apartment. It was further established that the bullets found in the grocery store were fired by the gun found in appellant's apartment, that approximately $900.00 was found missing from the store safe, as well as $720.00 which Arnie had been holding for a friend, and that $1,598.00 was found in appellant's apartment.

There was conflicting evidence as to whether appellant was drunk at the time of the crime, the arresting officers testifying that he was not drunk when they arrested him shortly after the crime, and appellant, testifying on his own behalf, stating that

he was so drunk that he could not remember any of the events of the evening preceding his arrest. There was other evidence showing that appellant consumed a large quantity of alcoholic beverages on the day of the crime, that he had been a heavy drinker since he was thirteen years of age, that once he started drinking, he usually wouldn't stop until he "passed out," and that he had no memory of what occurred after he became drunk. There was evidence also showing that appellant was twenty-five years of age at the time of the crime and of low mentality.

Appellant's principal defense was that he was insane at the time of the commission of the crime.[1] To establish this defense, he produced Dr. Talmage Reeves, a psychiatrist, who testified that he examined appellant on May 1, 1967 for approximately one hour and that on the basis of this examination, he concluded that at the time of the commission of the crime, appellant had a "character behavior disorder" and, in addition, "an acute brain syndrome secondary to alcohol ingestion—severe alcohol ingestion"; that the acute brain syndrome was due to ingestion of alcohol; that it was acute and irreversible in appellant's case because of its long existence; that as a result thereof, appellant had impaired comprehension and judgment, including impaired memory; that such impairment was to the extent "that he was unable to comprehend that if he did something which was violent, what the consequences may do-be"; that he could not say specifically "yes or no" whether appellant "was of such mental capacity and reason so as not to be able to properly distinguish between right and wrong and to know the nature and consequences of his acts as applied to himself," but that "because of comprehension and judgment impairment, there was some difficulty"; that "comprehension and judgment were somewhat impaired to the point that he was unable to think clearly and to know the nature of what he was doing and the consequences," but that he could not say that appellant "absolutely did not know right from wrong."

On the basis of this testimony, the court ruled the defense had sufficiently rebutted the presumption of sanity to permit

---

1. As the trial was held before June 1, 1967, the test of criminal responsibility then prevailing was the M'Naghten-Spencer test.

the issue to go to the jury. Thereafter, the State called Ido Adamo, a psychiatrist at Clifton Perkins State Hospital. He testified that he had examined appellant and diagnosed his condition as a character disorder with chronic alcoholism. Dr. Adamo testified that appellant had no psychosis; that "he certainly doesn't suffer from any disease which could have caused him to be in such a state of mind to be unable to know right from wrong"; that "if he was intoxicated, that's a different story"; and that appellant was "probably responsible" for his action at the time of the commission of the crime.

The court, after instructing the jury on the standard to determine whether a person is sane or insane under the M'Naghten test, instructed the jury on the issue of burden of proof as follows:

> "\* \* \* the burden of proof is upon the defendant to establish insanity by a preponderance of the evidence; but then the burden then shifts to the State to prove beyond a reasonable doubt that he was sane."

That this instruction was erroneous is entirely clear. In *Bradford v. State,* 234 Md. 505, decided May 4, 1964, and in *Fowler v. State,* 237 Md. 508, decided February 11, 1965, it was held that it was error to charge a jury—in those cases where the presumption of sanity had been overcome by the accused—that the burden was on the defense to prove insanity by a preponderance of the evidence. The court held in such cases that the jury should be instructed that the burden of proof is upon the State to prove the defendant sane beyond a reasonable doubt. See also *Jenkins v. State,* 238 Md. 451; *White v. State,* 3 Md. App. 167; *McCracken v. State,* 2 Md. App. 716; *Bergin v. State,* 1 Md. App. 74.

The effect of the court's instruction was, therefore, to inform the jury that even though appellant had sufficiently rebutted the presumption of sanity to permit the issue to go to the jury, nevertheless, it was incumbent upon him to prove his insanity by a "preponderance of the evidence," before the burden of proof shifted to the State to show that he was sane "beyond a reasonable doubt." Appellant made no objection to the court's instructions and indeed consented to the charge being tran-

scribed and a copy given to the jury for its consideration. Ordinarily, where no objection is made to the court's instructions, a contention that there was error therein is not reviewable on appeal. *Hicks v. State,* 3 Md. App. 225; Maryland Rule 756 g. The reason for the rule requiring objection as a prerequisite to appellate review is a salutary one, being designed to afford the trial judge an opportunity to correct inadvertent omissions or inaccuracies in his instructions, where the alleged error is one that might have been readily corrected if it had been called to the trial judge's attention. *Bennett v. State,* 230 Md. 562; *Canter v. State,* 220 Md. 615; *Reynolds v. State,* 219 Md. 319. Maryland Rule 756 g further provides, however, that we may "take cognizance of and correct any plain error in the instructions, material to the rights of the accused," even though there was no objection to the instructions. In *Martel v. State,* 221 Md. 294 and *Madison v. State,* 200 Md. 1, it was held that this provision of the Rule should not be invoked to cure bad guesses by counsel whether or not to object to the court's instructions, nor was it designed to alleviate consequences unfortunate to the accused resulting from his counsel's choice of trial tactics. We do not believe that appellant's failure to object to the erroneous instruction was either a bad guess or a trial tactic but resulted rather from a misunderstanding of the applicable law—a misunderstanding also shared by the court, and by the State, despite the clear articulation of the law in *Bradford* and *Fowler.* With appellant's basic defense being that he was insane at the time the crime was committed, such an error in the instructions can hardly be deemed harmless; on the contrary, the error was a fundamental one going to the very heart of a successful defense based on insanity. We hold, under the circumstances of this case, that the erroneous instruction so fundamentally affected appellant's insanity defense as to constitute plain error material to the rights of the accused within the spirit and meaning of Maryland Rule 756 g.

The State contends that even if the court's instructions on burden of proof were erroneous, nevertheless, there was no reversible error since there was no sufficient evidence of insanity adduced at the trial by the appellant to require the submission of the issue of insanity to the jury in the first place. While the

testimony of Dr. Reeves concerning appellant's lack of criminal responsibility under the M'Naghten test was sketchy and, at times, seemingly self-contradictory, we cannot say that the lower court erred in permitting the issue to go to the jury, particularly since it could have found that the gist of Dr. Reeves's testimony was that because of appellant's acute brain syndrome, brought on by ingestion of alcohol over a long period of time, his judgment and comprehension at the time of the crime were impaired to the extent that he did not know what he was doing or the nature and consequences of his acts. Compare *Fowler v. State, supra; O'Connor v. State,* 234 Md. 459; *White v. State, supra; McCracken v. State, supra.*

In view of our conclusion, we need not reach other contentions raised by appellant.[2]

> *Judgment reversed; case remanded for a new trial.*

---

**2.** See, however, *Crews v. Director,* 245 Md. 174, and *Avey v. State,* 249 Md. 385.