# STATE OF MARYLAND *v.* EVANS

[No. 173, September Term, 1975.]

*Decided July 15, 1976.*

198

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ■O'DONNELL, JJ.

*Clarence W. Sharp* and *Alexander L. Cummings, Assistant Attorneys General*, with whom were *Francis B. Burch, Attorney General*, and *Deborah K. Handel, Assistant Attorney General*, on the brief, for appellant.

*Alan H. Murrell, Public Defender*, and *Victoria A. Salner, Assistant Public Defender*, with whom was *Dennis M. Henderson, Assistant Public Defender*, on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant Evans was charged with murdering Alonzo

Counts by stabbing him to death on June 20, 1974.[1] Testimony adduced at the trial before a jury established a pattern of angry and violent confrontations between Evans and Counts during the hours immediately preceding the homicide; the confrontations were broken by brief periods when the two men were out of contact with one another. There was evidence from which the jury could have concluded that Evans stabbed Counts without justification, excuse or legally adequate provocation. There was also evidence from which the jury could have concluded that Evans stabbed Counts in self-defense or in hot blood in the course of mutual combat.

The court instructed the jury that the burden of proof was upon the State "to prove every element of the crimes charged"; it said that Evans was "presumed innocent until proven guilty beyond a reasonable doubt." The court defined murder in the first and second degrees and manslaughter; it said that the essential distinction between murder and manslaughter was the presence or absence of malice. The court defined malice as "the intentional doing of a wrongful or illegal act to another without legal excuse or justification." It instructed the jury that where the evidence proves beyond a reasonable doubt that the killing was done with malice, murder in the second degree had been proved. The court said that "[u]pon proof by the State of murder, without anything else, the presumption is that it is murder in the second degree." The court instructed the jury that the State carried the burden of establishing the elements of willfulness, deliberation and premeditation in order to "raise the degree to murder in the first degree," but that the accused had the burden of "showing the elements which would reduce the crime to manslaughter or which would make the homicide justifiable and excusable." The court instructed the jury that the use of a deadly weapon "directed at a vital part of the body gives rise to the presumption that

---

1. The indictment was in one count; it charged that Evans, feloniously, willfully, and of deliberately premeditated malice aforethought, murdered Counts. Under such an indictment the accused could be found guilty of the lesser offenses of murder in the second degree and manslaughter. Carroll v. Warden, 205 Md. 631, 106 A. 2d 71 (1954).

malice existed." It qualified that instruction by thereafter stating that "[i]n the absence of justification, excuse or some circumstance of mitigation," malice could be inferred "where there is an intent to inflict great bodily harm or where one does the act, the natural tendency of which is to cause death or great bodily harm." The court followed this instruction with the further statement that "[s]ince malice can be inferred from the act of directing a deadly weapon at a vital part of the body, the State was required to show nothing more to present a jury question as to murder in the second degree." The court then fully instructed the jury on the law of self-defense; it said that the accused was entitled to acquittal if he established, by a preponderance of the evidence, that the killing was committed in self-defense.

Evans did not except to the court's instructions. The jury found him guilty of murder in the second degree and he was sentenced to 10 years' imprisonment.

Evans appealed to the Court of Special Appeals, claiming that the jury instructions were defective, confusing, and misleading and, as such, constituted reversible error. While his appeal was pending, the Supreme Court, on June 9, 1975, decided *Mullaney v. Wilbur*, 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508 (1975). It held that a Maine jury instruction which required a defendant charged with murder to prove, by a preponderance of the evidence, that he acted "in the heat of passion on sudden provocation" in order to reduce the homicide to manslaughter violated the rule of *In re Winship*, 397 U. S. 358, 90 S. Ct. 1068, 25 L.Ed.2d 368 (1970), that the due process clause of the fourteenth amendment requires the prosecution, to prove beyond a reasonable doubt, "every fact necessary to constitute the crime" with which a defendant is charged. 397 U. S. at 364. Relying upon *Mullaney*, Evans contended that since provocation was an issue in his case, the jury instructions were constitutionally defective in stating that he had the burden of showing the elements which would reduce the crime to manslaughter; in stating that the use of a deadly weapon directed at a vital part of the body gives rise to the presumption that malice existed; and in saying that the State was required to show

nothing more to present a jury question as to murder in the second degree. Evans contended that under *Mullaney* the jury should have been told that it could not presume malice if it found the existence of mitigating circumstances; that it could not find him guilty of murder unless it was satisfied beyond a reasonable doubt that mitigating circumstances did not exist; and that there was no burden on his part to reduce the crime to manslaughter.

The Court of Special Appeals, in a scholarly opinion by Judge Charles E. Moylan, Jr., in *Evans v. State,* 28 Md. App. 640, 349 A. 2d 300 (1975), held that the court's jury instructions violated the constitutional principles articulated in *Mullaney.* Although Evans did not except to the jury instructions, the Court of Special Appeals considered that "plain error" had been committed and agreed to consider the issues raised by Evans on the merits. See Maryland Rule 756 g.

The Court of Special Appeals carefully analyzed the *Mullaney* decision. It noted that Wilbur, the defendant, had been charged with murder in a state court in Maine. He claimed that he killed the victim in a frenzy provoked by the latter's homosexual advances. He contended that at most the homicide was manslaughter since it occurred in the heat of passion provoked by the homosexual assault. The trial court instructed the jury that under the law of Maine, an unlawful killing of a human being with malice aforethought constituted murder, while an unlawful killing in the heat of passion, on sudden provocation, without malice, constituted manslaughter. The court said that malice was an essential and indispensable element of the crime of murder, without which the crime would be manslaughter. It told the jury that the common elements of murder and manslaughter were that the homicide be unlawful, *i.e.,* neither justifiable nor excusable, and that it be intentional; that the prosecution was required to prove these elements beyond a reasonable doubt; and only if they were so proved was the jury to consider the distinction between murder and manslaughter. The court further instructed the jury that "if the prosecution established that the homicide was both intentional and

unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." 421 U. S. at 686. The court emphasized that malice aforethought and heat of passion on sudden provocation were inconsistent things; that by proving the latter the defendant would negate the former and reduce the homicide from murder to manslaughter.

The jury found Wilbur guilty of murder. On appeal, he argued that he had been denied due process of law because he was required to negate the element of malice by proving that he had acted in the heat of passion on sudden provocation. He claimed that under Maine law malice aforethought was not only an essential element of murder, but was the sole element distinguishing murder from manslaughter. He maintained that *Winship* required that the prosecution prove that element beyond a reasonable doubt, and that by permitting the jury to presume non-mitigation, the prosecution had been relieved of its burden under *Winship* to prove the existence of malice beyond a reasonable doubt. The Maine Supreme Court disagreed; it held that murder and manslaughter were not distinct crimes but rather different degrees of a single generic offense of felonious homicide. It said that the prosecution could constitutionally rest on a presumption of implied malice aforethought and require the defendant to prove that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter. *See State v. Wilbur*, 278 A. 2d 139 (Me. 1971).

In holding unconstitutional that part of the Maine law that required the defendant to establish, by a preponderance of the evidence, that he acted in the heat of passion on sudden provocation in order to reduce murder to man-slaughter, the Supreme Court said:

> "The Maine law of homicide, as it bears on this case, can be stated succinctly: Absent justifica-tion or excuse, all intentional or criminally reck-less killings are felonious homicides. Felonious homicide is punished as murder — *i.e.,* by life

imprisonment — unless the defendant proves by a fair preponderance of the evidence that it was committed in the heat of passion on sudden provocation, in which case it is punished as manslaughter — *i.e.*, by a fine not to exceed $1,000 or by imprisonment not to exceed 20 years." 421 U. S. at 691.

The Supreme Court then traced the development of the law relating to homicide for several centuries; noting that in the last fifty years the large majority of the states have required the prosecution to prove the absence of the heat of passion on sudden provocation beyond a reasonable doubt, it said:

"This historical review establishes two important points. First, the fact at issue here — the presence or absence of the heat of passion on sudden provocation — has been, almost from the inception of the common law of homicide, the single most important factor in determining the degree of culpability attaching to an unlawful homicide. And, second, the clear trend has been toward requiring the prosecution to bear the ultimate burden of proving this fact." 421 U. S. at 696.

Rejecting the contention that the difficulty in negating an argument that the homicide was committed in the heat of passion justified placing the burden of proving this fact on the defendant, the Supreme Court said:

"No doubt this is often a heavy burden for the prosecution to satisfy. The same may be said of the requirement of proof beyond a reasonable doubt of many controverted facts in a criminal trial. But this is the traditional burden which our system of criminal justice deems essential." 421 U. S. at 701.

The Court concluded by stating:

"We therefore hold that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion

on sudden provocation when the issue is properly presented in a homicide case." 421 U. S. at 704.

Following its analysis of *Mullaney*, the Court of Special Appeals concluded that it "dooms as unconstitutional any procedural device which 1) imposes upon a defendant a burden of proving, by any standard, his innocence as to any element of a crime or 2) relieves the State of its burden of ultimate persuasion beyond a reasonable doubt as to any issue fairly in the case." 28 Md. App. at 654. On the authority of *Ivan V. v. City of New York*, 407 U. S. 203, 92 S. Ct. 1951, 32 L.Ed.2d 659 (1972), which held that *Winship* was fully retroactive, the Court of Special Appeals held that *Mullaney* was also to be given complete retroactive effect.

The Court of Special Appeals reversed Evans' conviction for second degree murder and remanded the case for a new trial. It said that the issues of mitigation and self-defense had been properly generated by the evidence, and that the jury instructions given by the lower court violated the principles of *Mullaney*. It concluded:

> "... the jury instruction to the effect that malice might be presumed (including therein the presumption of non-mitigation) unconstitutionally relieved the State of its burden of proving the element of non-mitigation beyond a reasonable doubt. When the instruction went further and placed an affirmative burden on the defendant to prove mitigation by a preponderance of the evidence, it aggravated what was already unconstitutional even without the aggravation.
>
> "... The jury instruction to the effect that malice might be presumed (including therein the presumption of non-justification and non-excuse) unconstitutionally relieved the State of its burden of negating justifiable or excusable self-defense beyond a reasonable doubt. The additional instruction placing an affirmative burden on the defendant to prove justification or excuse by a preponderance of the evidence simply aggravated

what was already unconstitutional even without the aggravation." 28 Md. App. at 730-31.

We granted certiorari to consider the impact of *Mullaney* and *Winship* on the law of homicide in Maryland.

I

One of the primary concerns of *Mullaney* and *Winship* was with "the societal interests in the reliability of jury verdicts" and those cases focused upon "the interests of both the State and the defendant as affected by the allocation of the burden of proof." 421 U. S. at 699. The Court noted in *Mullaney* that proving that the defendant did not act in the heat of passion on sudden provocation was similar to proving any other element of intent; it may be established by adducing evidence of the factual circumstances surrounding the commission of the homicide. 421 U. S. at 702. It said that where the defendant is required to prove a critical fact in dispute in a homicide case, the likelihood of an erroneous murder conviction was increased; it concluded under the particular facts in *Mullaney* that the State had "affirmatively shifted the burden of proof to the defendant." 421 U. S. at 701.

We fully concur with the Court of Special Appeals that in view of *Mullaney* and *Winship*, the trial court's instructions to the effect that malice could be presumed from pointing a deadly weapon at a vital part of the body unconstitutionally relieved the State of its burden of proving, beyond a reasonable doubt, the absence of mitigation where, as here, a jury had returned a conviction of murder in the second degree and the defense of provocation had been fairly raised by the evidence in the case. While it may be proper to infer an intention to kill or to do grievous bodily harm from the directing of a deadly weapon at a vital part of the human anatomy, it is improper to infer "malice" therefrom, since the use of deadly force does not itself negate the absence of mitigating circumstances; were it otherwise, the State would be unconstitutionally relieved of its burden of proving the absence of mitigation and would have shifted the burden of persuasion to the defendant to lower his guilt to

manslaughter, precisely that which *Mullaney* proscribes. We also agree that under *Mullaney* and *Winship* due process of law is offended by placing the burden on the defendant to prove, by any standard, the existence of mitigating circumstances necessary to lower a felonious homicide to the level of manslaughter. All Maryland homicide cases involving the defense of mitigation which contain contrary holdings are no longer valid precedents.

While *Mullaney* dealt only with instructions in a jury trial on the subject of the allocation of the burden of proof on the defense of "heat of passion on sudden provocation" where the issue before the jury was whether a guilty verdict should be for murder or only for manslaughter, it is clear, as Judge Moylan so succinctly pointed out for the court in *Evans* that a "fairer reading" of that case indicates:

> ". . . that what is involved is the broader question of the allocation of the burden of persuasion where a wrongful allocation of that burden will operate to relieve the State of its obligation under the Due Process Clause, as interpreted by *Winship*, to prove each and every element of a criminal offense beyond a reasonable doubt. This goes beyond the limited defense of mitigation and it goes beyond the limited confines of jury instructions." 28 Md. App. at 673.

In *State v. Grady*, 276 Md. 178, 182, 345 A. 2d 436, decided October 7, 1975, we recognized that *Mullaney* extended the rationale of *Winship* by interpreting the due process clause of the fourteenth amendment "as requiring the prosecution to prove beyond a reasonable doubt the absence of heat of passion when that issue was properly presented in a homicide case." We said at page 182 that under the Federal Constitution, as well as the Constitution of Maryland, "the burden is on the State to prove all elements of the alleged crime . . . beyond a reasonable doubt . . . ." *Grady* involved an erroneous jury instruction which placed upon the defendant the burden of proving an alibi defense. We there said that *Winship* and *Mullaney* "apply to the issue of who

has the burden of proof and what that burden is when an accused relies on an alibi as a defense." 276 Md. at 182.

Although reliance upon an alibi is not generally considered as an "affirmative defense," the Court of Special Appeals, in *Evans*, observed that in view of *Grady* and under the *Mullaney* decision itself, the principles of *Mullaney* were applicable to any defense theory of justification, excuse or mitigation, including self-defense, accident, intoxication, entrapment, duress or coercion, and necessity. It pointed out that *Mullaney* essentially equated situations involving mitigation and self-defense when it observed:

"... Maine itself requires the prosecution to prove the absence of self-defense beyond a reasonable doubt.... Satisfying this burden imposes an obligation that, in all practical effect, is identical to the burden involved in negating the heat of passion on sudden provocation...." 421 U. S. at 702.

The court concluded in *Evans* that a jury instruction given in a homicide case which cast upon the defendant the burden of persuasion by a preponderance of the evidence when the issue of self-defense was raised by the evidence (*see Wilson v. State*, 261 Md. 551, 276 A. 2d 214 (1971)) was constitutionally defective under *Mullaney* since it shifted the burden to the defendant to prove justification or excuse for the homicide. We agree with that conclusion and therefore hold that all Maryland cases which contain contrary holdings are no longer valid precedents.

Of course, nothing in *Mullaney* per se precludes the use of traditional presumptions or logical inferences arising from established facts; what *Mullaney* precludes is the use of such presumptions or inferences only when they operate, ultimately, to relieve the State of its burden of persuasion in a criminal case, *i.e.*, its burden of proving beyond a reasonable doubt all the facts necessary to constitute the offense when the issue of their existence becomes an issue in the case. *State v. Hankerson*, 288 N. C. 632, 220 S.E.2d 575 (1975); *Evans v. State, supra*.

The court in *Evans* was careful to point out that the

burden of initially producing "some evidence" on the issue of mitigation or self-defense (or of relying upon evidence produced by the State) sufficient to give rise to a jury issue with respect to these defenses, is properly cast upon the defendant. Once the issue has been generated by the evidence, however, the State must carry the ultimate burden of persuasion beyond a reasonable doubt on that issue. Nothing in *Mullaney* in any way purports to circumscribe this well-established procedure; indeed in *Mullaney* the Court recognized that many states do require the defendant to make a threshold showing that there is "some evidence" indicating that the defendant acted in the heat of passion before the prosecution is required to negate this element of the offense beyond a reasonable doubt. *See* 421 U. S. at 701-02 (n. 28). In other words, the prosecution need not in the first instance introduce evidence of facts which negate the existence of mitigating circumstances or of self-defense; and if the defendant adduces no evidence of these matters, no issue of their existence is raised in the case and no jury instructions regarding mitigating circumstances or self-defense need be given.

The State suggests that the jury instructions on mitigation and self-defense only required that Evans start matters off by initially producing evidence pertaining to his self-defense and provocation defenses. It argues that nothing in the court's instructions required the defendant to carry the burden of ultimate persuasion on these issues. We cannot agree; a review of the court's instructions plainly indicates that the burden of persuasion was cast upon the accused.

The State suggests that the court in *Evans* viewed the instructions in isolation from one another and out of context; it claims that in the context of the overall charge, the instructions did not constitute reversible error under *Mullaney*. We recognized in *State v. Grady, supra,* and in countless other cases, that jury instructions must be viewed as a whole and that no portions should be read out of proper context. *Mullaney* itself recognized the principle that jury instructions must be considered contextually in determining

whether there is error of federal constitutional dimension. 421 U. S. at 691 (n. 10). *See also Cupp v. Naughten,* 414 U. S. 141, 94 S. Ct. 396, 38 L.Ed.2d 368 (1973). Reading the instructions in their entirety, we think they violated the due process considerations outlined in *Mullaney. See Dorsey v. State,* 276 Md. 638, 350 A. 2d 665 (1976).

We hold in this case that the principles of *Mullaney* cover the allocation of the burden of persuasion in homicide cases tried before a jury where, as here, the defenses of mitigation and self-defense were generated by the evidence. In so concluding, we note that *Mullaney* did not expressly overrule *Leland v. Oregon,* 343 U. S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302 (1952), a case involving an Oregon statute which required a defendant in a criminal case to prove insanity beyond a reasonable doubt; the Court there said that there was no constitutional requirement that the State shoulder the burden of proving the sanity of the defendant.[2] *See Rivera v. State,* Del. Supr., 351 A. 2d 561 (1976), where the court held that a statute classifying mental illness as an affirmative defense which the defendant was required to prove by a preponderance of the evidence did not conflict with the due process clause of the fourteenth amendment, and *People v. Patterson,* 39 N.Y.2d 288, 347 N.E.2d 898 (decided April 1, 1976), where the Court of Appeals of New York declined to apply *Mullaney* to the affirmative mitigation defense of "acting under the influence of extreme emotional distress" on the ground that even though the defendant was required to establish his defense by a preponderance of the evidence, the New York statute differed substantially from the Maine law involved in *Mullaney.* And *see State v. Hankerson, supra,* holding that *Mullaney* principles covered self-defense as well as mitigation defenses, and Vol. 64, Georgetown Law Journal 871-894 (1976), concluding that *Winship-Mullaney* standards apply generally to all so-called affirmative defenses.

---

**2.** Under Maryland law the defendant is presumed sane; once he adduces "sufficient evidence" of insanity, the burden is upon the State to prove his sanity beyond a reasonable doubt. *See* Fowler v. State, 237 Md. 508, 206 A. 2d 802 (1965); Bradford v. State, 234 Md. 505, 200 A. 2d 150 (1964); Parker v. State, 4 Md. App. 62, 241 A. 2d 185 (1968).

## II

### (Retroactivity)

The Court of Special Appeals held that *Mullaney* must be accorded full retroactive effect. *Evans v. State*, 28 Md. App. 651-54. It reasoned that *Mullaney* was based on the Supreme Court's earlier holding in *Winship*, a decision subsequently given full retroactive effect by the Supreme Court in *Ivan V. v. City of New York, supra*.

For the identical reasons given in *Evans*, the Court of Appeals of New York, in *People v. Patterson, supra*, also concluded that *Mullaney* should be given retroactive application. In *United States v. Regan*, 525 F. 2d 1157, 1160 (3rd Cir. 1975), it was said that inasmuch as *Mullaney* was solidly grounded on *Winship*, it was arguable that *Mullaney* should also be fully retroactive. The Supreme Court of Pennsylvania in *Commonwealth v. Moyer*, Pa., 353 A. 2d 447 (1976), held that *Mullaney* would "likely" be accorded retroactive effect. On the other hand, the Supreme Court of North Carolina in *State v. Hankerson, supra*, and the Supreme Court of Delaware in *Fuentes v. State*, Del. Supr., 349 A. 2d 1 (1975), flatly held that *Mullaney* applied only prospectively. After careful consideration, we hold that *Mullaney*, involving as it does the integrity of the fact-finding function, must be given full retroactive effect in view of our recent decision in *Wiggins v. State*, 275 Md. 689, 344 A. 2d 80 (1975).

## III

### (Plain Error)

Maryland Rule 756 g provides that upon appeal a party assigning error in the jury instructions may not do so of right unless (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct was distinctly objected to before the jury retired to consider its verdict and (2) the grounds of the objection were stated at that time. The rule provides that "ordinarily" no other error will be considered on appeal, but it permits appellate courts to "take cognizance of and correct

any plain error in the instructions, material to the rights of the accused even though such error was not objected to . . . ." Although Evans did not lodge any objection to the instructions, the Court of Special Appeals held that in view of *Mullaney* the errors in the jury instructions were material to Evans' rights and were irremediable. It said that the holding in *Mullaney* could not have been anticipated at the time of Evans' trial and it determined to exercise its discretion to notice the error because "of the legion of cases already beginning to surface in the wake of *Mullaney v. Wilbur*, and because of the inevitably greater legions yet to follow." 28 Md. App. at 650-51. Finding the case to be an "appropriate and necessary vehicle," the court deemed a prompt review of the instructions necessary to serve the ends of fundamental fairness and substantial justice.

The State argues that simply because the errors may have been of constitutional dimension does not raise them to the level of "plain error" under Maryland Rule 756 g. While we fully agree with that premise, we think it apparent that the Court of Special Appeals did not abuse the discretion vested in it under the rule. Under the Post Conviction Procedure Act, Maryland Code (1957, 1976 Repl. Vol.) Article 27, § 645A (d), no error is deemed to have been waived in a case where a decision of the Supreme Court subsequently imposes upon State criminal proceedings "a procedural or substantive standard not theretofore recognized, which such standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence." Undoubtedly, the court in *Evans* considered that the *Mullaney* errors were subject to collateral attack under this section in any event, and proceeded to recognize them on its own motion notwithstanding the fact that the errors may not have been technically "plain" within the traditional application of the rule's provisions.

In *Canter v. State,* 220 Md. 615, 155 A. 2d 498 (1959), we said that Rule 756 g was designed to afford the trial judge an opportunity to correct inadvertent omissions or inaccuracies in a charge, and that an appellate court should not exercise its right to take cognizance of and correct any plain error

material to the rights of the accused, of its own motion, if the alleged error was one that might have been readily corrected if it had been called to the trial judge's attention. We see no reason in the special circumstances of this case to conclude that the Court of Special Appeals violated the provisions of Rule 756 g.

*Judgment of the Court of Special Appeals affirmed.*