571 A.2d 1208

**Salvadore Benjamin FRANKLIN**

v.

**STATE of Maryland.**

**No. 180, Sept. Term, 1987.**

Court of Appeals of Maryland.

April 6, 1990.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender and Nancy S. Forster, Asst. Public Defender, all on brief), Baltimore, for petitioner.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL *, JJ.

---

* BLACKWELL, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being

COLE, Judge.

Petitioner, Salvadore Benjamin Franklin, was charged by indictment in the Circuit Court for Prince George's County with assault with intent to murder, assault with intent to maim, assault with intent to disfigure, false imprisonment, and assault and battery. The charges arose out of an altercation between Franklin and his former girlfriend, Stephanie Briggs, on November 28, 1985, at Franklin's apartment. At trial, Briggs testified that Franklin asked her to accompany him to his apartment to remove their baby's clothing. Briggs recounted that as she attempted to remove the clothing Franklin beat her brutally. He continued to do so for approximately six hours, hitting her with a chair over her body, slapping her several times, threatening her with a pair of scissors and a knife, and body slamming her to the floor causing her to lose consciousness. After regaining consciousness, she was forced to kneel on the floor and cut her own hair. When she became dizzy and fell to the floor, Franklin kicked her and punched her in the ribs. Finally, after some more beatings, Franklin had sex with her and he fell asleep. At that point Briggs left the apartment and hitched a ride to her godfather's house in Washington, D.C. She was later taken to Howard University Hospital where she was diagnosed as suffering from severe bruises, abrasions, a ruptured eardrum, a fractured rib, a collapsed lung, and a brain contusion. The doctor described these injuries as life threatening.

During the trial, defense counsel submitted to the trial judge the following jury instruction for the charge of assault with intent to murder:

---

recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

## DEFENDANT'S PROPOSED INSTRUCTION FOR ASSAULT WITH INTENT TO MURDER

Assault with intent to murder consists of the elements of an assault and an intent to murder. In order for a person to be found guilty of this offense, the State must prove beyond a reasonable doubt that: (1) there was an assault on the victim; (2) the assault was made by the defendant; and (3) the assault was committed with the intent to murder the victim.

The term "assault," as used here, is any intentional attempt by force to inflict injury upon the person of another. The essence of the offense of assault with intent to murder is the term "intent to murder."

In order for a person to be found guilty of assault with intent to murder, the assault must have been committed with such intent that if death had resulted the act would have been murder but not manslaughter.

Murder is an unlawful killing of a human being with malice aforethought. Malice may be expressed or implied from the circumstances, but it must be present. Since malice is indispensable to a finding of a murder, in order to find assault with intent to murder, you must find the defendant acted with malice.

Malice is an intent to kill or to do grievous bodily injury, or to do an act which would usually cause death or great bodily harm where there is no justification, excuse or mitigation.

A specific intent to murder is not necessary to sustain a conviction; it is sufficient if there was an intention to commit grievous bodily harm. The intent cannot be inferred from only an assault or the use of a weapon, although these are factors to be considered.

You may infer an intent to kill from the use of a deadly weapon directed toward a vital part of the body, but you must be convinced beyond a reasonable doubt of the lack of such justification, mitigation, or excuse to find malice.

The court, without objection from defense counsel, instructed the jury, in pertinent part, as follows:

> In order for a person to be found guilty of this offense, the State must prove beyond a reasonable doubt that there was an assault upon the victim, that the assault was made by the Defendant and that the assault was committed with the intent to murder the victim.
>
> The term "assault" as used here is any intentional attempt by force to inflict injury upon the person of another. The essence of the offense of assault with intent to murder is the term "intent to murder."
>
> *A specific intent to murder is not required. It is enough if you find that the accused intended to inflict grievous bodily harm.* The intent cannot be inferred from the mere fact of the assault or from the mere use of a deadly weapon. (emphasis added.)

After deliberating for an hour and a half, the jury asked the trial court to explain "what specifically constitutes intent to murder." The court repeated its instructions including the statement that "a specific intent to murder is not a necessary element for the conviction of assault with intent to murder. It is sufficient if there was an intention to commit grievous bodily harm." There was no objection. Based on these instructions the jury convicted Franklin on all five counts. He was sentenced to concurrent prison terms of thirty years for assault with intent to murder, ten years each for assault with intent to maim and assault with intent to disfigure, and a fifteen year consecutive sentence for false imprisonment. The fifth count of assault and battery merged with the first count.

Franklin appealed to the Court of Special Appeals complaining that the jury instruction given by the trial judge on assault with intent to murder was erroneous. That court, however, held that the issue had not been preserved for appellate review due to defense counsel's failure to object. The intermediate appellate court in an unreported per curiam opinion, relying on its decision in *Glenn v. State,* 68 Md.App. 379, 511 A.2d 1110, *cert. denied,* 307 Md. 599, 516

A.2d 569 (1986), decided one month after Franklin was tried and convicted, held that the instruction given by the trial judge was an incorrect statement of the law but was correct in an evidentiary sense since the jury could have inferred a specific intent to kill from an intent to inflict grievous bodily harm. We granted Franklin's petition for certiorari and by per curiam order, in *Franklin v. State*, 310 Md. 568, 530 A.2d 743 (1987), summarily reversed and remanded the case to the Court of Special Appeals for consideration in light of *State v. Jenkins*, 307 Md. 501, 515 A.2d 465 (1986). On remand, the intermediate appellate court by per curiam decision reaffirmed the judgment of the Circuit Court for Prince George's County. We granted certiorari solely to determine whether the trial court's instruction on assault with intent to murder constituted plain error.

Initially, the State argues that there are no compelling circumstances to justify review by this Court given defense counsel's failure to object and specifically, that it was at defense counsel's request that the instruction was given. It contends that the error was one of law, not fact, and therefore not material and did not deprive the defendant of a fair and impartial trial within the contours of the plain error rule. We reject the State's argument for the reasons set forth below.

We have adhered to the view that this Court may, upon its own motion, take cognizance of and correct any plain error in a trial court's jury instruction, without an objection from defense counsel, where the error is material and affects the right of the defendant to a fair trial.[1] *Dawkins*

---

1. Rule 4–325(e) provides as follows:

    (e) Objection.—No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.

*v. State,* 313 Md. 638, 547 A.2d 1041 (1988); *Gore v. State,* 309 Md. 203, 522 A.2d 1338 (1987); *Trimble v. State,* 300 Md. 387, 478 A.2d 1143 (1984); *Hall v. State,* 292 Md. 683, 441 A.2d 708 (1982); *State v. Hutchinson,* 287 Md. 198, 411 A.2d 1035 (1980).

*Hutchinson* involved a trial judge's failure to instruct the jury that in addition to finding the defendant guilty, it could also find him not guilty. We held this to be plain error. We said that plain error occurs when the erroneous jury instruction materially affects the issue to be decided with such impact that it deprives the defendant of a fair and impartial trial. 287 Md. at 202–03, 411 A.2d at 1038. We emphasized that the error is material when it bears upon the question at issue and tends to influence the trier of fact's decision. We concluded that the error, in not instructing the jury as to all possible verdicts, deprived the defendant of a fair trial. We explained that we would exercise discretion to note plain error within certain limitations:

> While we do not propose to set forth any fixed formula for determining when discretion should be exercised, we do expect that the appellate court would review the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention. We enumerate these factors because we feel they are ordinarily inconsistent with circumstances justifying an appellate court's intervention under § h. In our cases we have characterized instances when an appellate court should take cognizance of unobjected to error as compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.

*Hutchinson,* 287 Md. at 203, 411 A.2d at 1038.

Although this Court has not, prior to this occasion, addressed the materiality of plain error in the context of an instruction dealing with the crime of assault with intent to murder, the rationale used by this Court in recognizing plain error in other cases is instructive.

In *Squire v. State*, 280 Md. 132, 368 A.2d 1019 (1977), the trial judge, without objection, instructed the jury that the burden of proof was on the defendant to prove his claim of self-defense. We held this plain error. We said that, although the trial court could not have known the law would change at the time the jury was instructed, nevertheless because the appeal was pending when the change occurred, fundamental fairness dictated that the defendant receive the benefit of the change.

We set forth this principle with some particularity in *State v. Evans*, 278 Md. 197, 362 A.2d 629 (1976). There, the defendant, Edward Evans, charged with murder, raised the defenses of provocation and self-defense in an attempt to mitigate the murder charge to the level of manslaughter. The trial court instructed the jury that the State carried the burden to prove every element of the crime charged, but that the defendant had the burden of proving, by a preponderance of the evidence, that he committed homicide in self-defense. Evans did not object to the court's instructions. He was later found guilty of murder in the second degree. Evans appealed complaining that the jury instructions were defective, confusing and misleading, and as such, constituted reversible error.' While Evans' appeal was pending review by the Court of Special Appeals, the United States Supreme Court decided *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), which declared that jury instructions given in a homicide case shifting the burden of proof on the defendant to establish by a preponderance of the evidence that he acted in the heat of passion or sudden provocation, was unconstitutional. *Evans*, 278 Md. at 206–07, 362 A.2d at 631.

The Court of Special Appeals, relying on *Mullaney*, reversed Evans' murder conviction on grounds that the court's jury instruction violated Evans' due process rights as articulated in *Mullaney*. Upon our review, we agreed with the intermediate appellate court that plain error had been committed regarding the applicable law on the issue of provocation and self-defense.

We noted that at the time *Mullaney* was decided, and when the trial court issued its instructions, the law in Maryland placed the burden of persuasion on the defendant to establish self-defense by a preponderance of the evidence. Thus, even if the defendant had objected to the court's instructions, it would not have benefited the defendant since it was the belief of counsel at the time that the instructions were given that they were in accordance with Maryland law.

Hence, we recognized that *Mullaney* made clear that a state statute casting the burden of persuasion upon a defendant to prove by a preponderance of the evidence that he acted in the heat of passion or sudden provocation in order to reduce homicide to manslaughter violated the rule of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), where the Supreme Court said that the prosecution is required to prove beyond a reasonable doubt every fact necessary to constitute the crime for which the defendant is charged.

Thus, we affirmed the Court of Special Appeals, which accorded *Mullaney* full retroactive effect, because the error in the jury instructions was material to the rights of the defendant and irreparable.[2]

Before us, Franklin's contention of error focuses on the trial court's instruction to the jury that a specific intent to murder was not required to prove the charge of assault with intent to murder. He asserts that the instruction was

---

**2.** We note that the Court of Special Appeals in *Parker v. State,* 4 Md.App. 62, 241 A.2d 185 (1968), a case factually similar to the case at bar, examined a jury instruction placing the burden of proof upon the defendant to prove that he was insane at the time the crime was committed. The intermediate appellate court held that the instruction constituted plain error in light of existing law placing the burden of proof upon the State to prove the defendant sane beyond a reasonable doubt. *Id.* at 66, 241 A.2d at 187. Parker, although similar, is not legally analogous to the issue here because it did not involve an intervening appellate decision changing the law applicable at the time of the defendant's trial, but rather involved a misunderstanding by both the State and the trial court as to the prevailing law.

an incorrect statement of the law. Moreover, because the instruction was misleading and influenced the jury's deliberations, it was plain error and deprived him of a fair trial. Franklin concedes that defense counsel requested the instruction relied upon by the trial judge. He claims, however, that because his trial occurred prior to this Court's ruling in *Jenkins*, the law was unclear and for these reasons, he asks this Court to reverse his conviction. We shall examine the argument raised by Franklin in deciding whether the jury instruction given affected his right to a fair and impartial trial.

The crime of assault with intent to murder is a statutory offense. Md.Ann.Code Art. 27, § 12 (1987 Repl.Vol.). The elements of the offense have not been defined by statute, but in *Jenkins* we left no doubt that assault with intent to murder requires proof of a specific intent to kill. 307 Md. at 515, 515 A.2d at 472. We explained that assault with intent to murder is clearly distinct from the offense of assault with intent to do grievous bodily harm. *Id.* at 510, 515 A.2d at 469. In support of our position, we departed from our principal statements in *Hall v. State*, 213 Md. 369, 131 A.2d 710 (1957), and *Webb v. State*, 201 Md. 158, 93 A.2d 80 (1952), where we said "it is not necessary ... to sustain an indictment [for assault with intent to murder] that a specific intent to take life should be shown, and that a showing of an intent to commit grievous bodily harm would suffice." *Jenkins*, 307 Md. at 511, 515 A.2d at 470 (quoting *Webb v. State*, 201 Md. at 161–62, 93 A.2d at 82). *See also, Taylor v. State*, 238 Md. 424, 209 A.2d 595 (1965) (specific intent to murder is not an essential ingredient of assault with intent to murder); *Tate v. State*, 236 Md. 312, 203 A.2d 882 (1964) (specific intent to kill is not a necessary element of assault with intent to murder).

In *Jenkins*, the issue arose because we were confronted with the question of whether separate sentences may be imposed for assault with intent to murder and assault with intent to maim, disfigure, or disable based upon a single act of assault. Tony Lava Jenkins was charged with assault

with intent to murder, assault with intent to maim, disfigure, or disable, simple assault, and carrying a handgun. The jury convicted Jenkins on all four counts and he was sentenced accordingly. Jenkins appealed to the Court of Special Appeals which reversed the conviction for assault with intent to murder based on a finding that the intent elements of assault with intent to murder and assault with intent to maim, disfigure, or disable were inconsistent. With regard to assault with intent to murder, the intermediate appellate court held that an intent to kill was an element of the offense which could be inferred from an intent to do grievous bodily harm. *See Jenkins v. State,* 59 Md.App. 612, 618, 477 A.2d 791, 793 (1984).

Distinguishing the two offenses, this Court said that an intent to kill is the critical element of assault with intent to murder, although a trier of fact may be able to find this intent from established facts. *State v. Jenkins,* 307 Md. at 510, 515 A.2d at 469. We concluded, however, that unlike assault with intent to do grievous bodily harm, "in order to constitute assault with intent to murder ... it is essential that there should be an actual specific intent to take life." *Id.* at 515, 515 A.2d at 472 (quoting L. Hochheimer, *Crimes and Criminal Procedure,* 294 (2d ed. 1904)). Thus, as we see it, *Jenkins* reflects the current state of the law in Maryland regarding the elements necessary to establish the crime of assault with intent to murder.

The Court of Special Appeals, relying on *Glenn v. State,* 68 Md.App. 379, 511 A.2d 1110 (1986), concluded that assault with intent to murder required a specific intent to kill as the *mens rea* of assault with intent to murder, and that proof of an intent to commit grievous bodily harm could serve as "a legally sufficient predicate to support the inference of the necessary intent to kill." *Id.,* at 391, 511 A.2d at 1116. However, it was our decision in *Jenkins* that clarified the law. There we stated:

> [t]he intent element of assault with intent to murder requires proof of a specific intent to kill under circumstances such that, if the victim had died, the offense

would be murder. That an intent to murder may be shown by or inferred from facts showing an intent to do grievous bodily harm, does not convert the statutory offense to "assault with intent to do grievous bodily harm."

*Jenkins*, 307 Md. at 515, 515 A.2d at 472.

Thus, applying these principles to the case at bar, we find that the trial court committed plain error in instructing the jury that a specific intent to kill was not required to establish the crime of assault with intent to murder in light of *Jenkins*. Here, the jury, experiencing difficulty with the court's instruction, sent a note requesting clarification from the court on the assault with intent to murder charge. In response to the note, the court reinstructed the jury but still repeated the error:

The defendant is charged with assault with intent to murder. The essence of this offense is the intent to murder. Meaning simply that if the intent had been carried out and the victim had, in fact, died, the resulting crime would be murder, either in the first degree or murder in the second degree.

\* \* \* \* \* \*

A specific intent to murder is not a necessary element for the conviction of assault with intent to murder. It is sufficient if there was an intention to commit grievous bodily harm.

At the time the trial court issued the instruction, it did not have the benefit of *Jenkins*. Therefore, the error could not have been corrected by additional instructions. It is obvious to us, nevertheless, that this was plain error affecting materially Franklin's right to a fair and impartial trial.

Therefore, we reverse the judgment of the Court of Special Appeals.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUN-

TY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL. PRINCE GEORGE'S COUNTY TO PAY THE COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.