905 A.2d 334

**Samuel GARRETT**

v.

**STATE of Maryland.**

**No. 9, Sept. Term, 2005.**

Court of Appeals of Maryland.

Aug. 4, 2006.

Julia Doyle Bernhardt, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for petitioner.

Devy Patterson Russell, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

Petitioner, Samuel Garrett, seeks review of a Court of Special Appeals's judgment affirming two convictions for attempted first-degree murder after the jury considering the charges had been instructed, without objection, on the theory of transferred intent. Garrett presented two questions to this Court for which we granted certiorari:

1. Is it inappropriate and an abuse of discretion for the intermediate appellate court to refuse to exercise discretion

to recognize plain error in jury instructions because it disagrees with substantive law and public policy established by the Court of Appeals?

2. Was there plain error in the jury instructions on transferred intent?

*Garrett v. State*, 386 Md. 180, 872 A.2d 46 (2005). We hold that the Court of Special Appeals erred in failing to reverse Garrett's conviction for attempted first-degree murder based on a plain error analysis of the trial court's transferred intent instruction.

## I.

Samuel Garrett was charged with two counts of first-degree murder in violation of Maryland Code (1957, 1996 Repl.Vol.), Section 407 of Article 27, two counts of attempted first-degree murder in violation of Maryland Code (1957, 1996 Repl.Vol.), Section 411A (b) of Article 27,[1] two counts of use of a handgun

---

1. Maryland Code (1957, 1996 Rep. Vol.), Section 411A (b) of Article 27, provided:

   **Attempted murder.**
   (b) *Murder in the first degree.*—A person who attempts to commit murder in the first degree is guilty of a felony and on conviction is subject to imprisonment for not more than life.

   Section 411A (b) has been recodified without substantive change as Maryland Code (2002), Section 2–205 of the Criminal Law Article.

   Murder in the first-degree was defined in Maryland Code (1957, 1996 Rep. Vol.), Section 407 of Article 27 as:

   **First degree murder—Generally.**
   All murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of willful, deliberate and premeditated killing shall be murder in the first degree.

   Section 407 has been recodified as Maryland Code (2002), Section 2–201 of the Criminal Law Article and now reads in relevant part:

   **Murder in the first degree.**
   (a) *In general.*—A murder is in the first degree if it is:
   (1) a deliberate, premeditated, and willful killing;
   (2) committed by lying in wait;
   (3) committed by poison; or
   (4) committed in the perpetration of or an attempt to perpetrate:
   (i) arson in the first degree;
   (ii) burning a barn, stable, tobacco house, warehouse, or other outbuilding that:
   (1) is not parcel to a dwelling; and

in the commission of a felony or crime of violence in violation of Maryland Code (1957, 1996 Repl.Vol.), Section 441 of Article 27, and two counts of wearing a handgun in violation of Maryland Code (1957, 1996 Repl.Vol.), Section 36B(b) of Article 27. The theory of the State at trial was that Garrett shot one of his intended victims, William Harrison, at the Rainbow Carryout on Reisterstown Road on November 1, 2002, at the same time that both Dawnika Taylor and Richard Washington, solely bystanders, were in the carryout. Garrett's only defense to the charges was that he was not the perpetrator of the crimes. Nevertheless, the State requested a jury instruction on transferred intent,[2] which the trial judge incorporated into his instructions to the jury as follows:

---

(2) contains cattle, goods, wares, merchandise, horses, grain, hay, or tobacco;

(iii) burglary in the first, second, or third degree;

(iv) carjacking or armed carjacking;

(v) escape in the first degree from a State correctional facility or a local correctional facility;

(vi) mayhem;

(vii) kidnapping under § 3–502 or § 3–503(a)(2) of this article;

(viii) rape;

(ix) robbery under § 3–402 or § 3–403 of this article;

(x) sexual offense in the first or second degree;

(xi) sodomy; or

(xii) a violation of 4–503 of this article concerning destructive devices.

2. The dialogue between the trial judge and the prosecutor was as follows:

COURT: Gentlemen, are there any matters to bring to the Court's attention as to jury instructions?

\* \* \*

COURT: Anything from the State?

STATE: Your Honor, just we are using the instruction that I submitted, the transferred intent instruction, is that correct?

COURT: I have not decided yet.

STATE: Okay.

COURT: But you have submitted it.

STATE: That is the only thing that I would raise with respect—

COURT: Thank you.

It is essential to note that the trial court gave the transferred intent instruction at the State's request, rather than relying on the common law intent instruction. In the event that the more generic intent instruction had been given, because Garrett alleged he was the wrong

Mr. Foreman, ladies and gentleman of the jury, please be advised that attempted first-degree murder is broken down into, and if we may, let's first talk about it as being a substantial step beyond mere preparation toward the commission of murder in the first-degree. In order to convict the Defendant, Samuel Garrett, of attempted murder in the first-degree, that is again of Dawnica Taylor and of Mr. Washington, Jr., the State must prove that Samuel Garrett took a substantial step beyond mere preparation toward the commission of murder in the first-degree.

The State must also prove that Samuel Garrett had the apparent ability at that time to commit the crime of murder

---

man, and intent was no longer at issue, the holding in *Walker v. State*, 343 Md. 629, 684 A.2d 429 (1996), would have controlled. In *Walker*, this Court distinguished between cases where intent was a key part of the defense's case, such as in *Franklin v. State*, 319 Md. 116, 571 A.2d 1208 (1990), and where it was not, such as in *Walker*. We explicated that:

> [w]e initially pointed out in the *Franklin* opinion that we could take cognizance of plain error in a jury instruction, which was not objected to, only "where the error is material and affects the right of the defendant to a fair trial." Since Franklin's defense centered on the nature of his intent when he assaulted and battered the victim, and because the jury experienced difficulty with the intent element of assault with intent to murder, we concluded in *Franklin* that the erroneous instruction "affect[ed] materially Franklin's right to a fair and impartial trial."
>
> In the *Walker* case, the victim was in a crowded bar and was shot with a gun. *The record discloses that Walker's defense was that the State "had the wrong man."* This was the theme of his attorney's opening statement and closing argument. It was the substance of the testimony of the witnesses called on Walker's behalf. The cross-examination of the State's witnesses was directed to the identity of the shooter. The only time Walker's counsel suggested an alternative defense was when he requested a self-defense instruction, and the trial court declined to give the instruction because there was no evidence generating the issue. *At no time during Walker's trial was any issue raised concerning the nature of the shooter's intent. It was never suggested to the court or the jury that the shooter's intent may have been something less than an intent to murder.*

*Walker*, 343 Md. at 649–50, 684 A.2d at 439 (citations omitted and emphasis added). We held in *Walker* that the circumstances in *Franklin* were very different from those in *Walker* where intent was not the disputed issue. "Thus, the error in the jury instruction concerning

in the first-degree. The State must also prove that the Defendant, Samuel Garrett, willfully and with premeditation and deliberation, intended to kill Dawnica Taylor and intended to kill Richard L. Washington, Jr. Again, willful means that the Defendant, Samuel Garrett, actually intended to kill. Premeditated means that the Defendant thought about the killing and that there was enough time, though it may only have been brief, for the Defendant, Samuel Garrett, to consider the decision whether or not to kill, and enough time to weigh the reasons for and against that choice.

It is important to point out again that the charge being submitted to you is that of attempted murder in the first-degree. So, therefore, again, as to that charge you must weigh as to whether or not the intended result, if you will, is murder in the first-degree, and that the action of the Defendant was a substantial step beyond mere preparation toward the commission of murder in the first-degree. It is not being submitted to you as attempted murder in the second degree. It is not being submitted to you as attempted assault in the first-degree as a charge. The only charge being submitted to you is that of attempted murder in the first-degree, and first-degree is that of premeditation and malice aforethought and deliberation.

In discussion, if you will, as to intent, you are instructed that you may hear argument, if you will, of transferred intent, and so the Court gives you the following information and instruction. The doctrine of transferred intent applies to the specific intent to murder. Transferred intent means that if one specifically intends injury to another person, and in an effort to accomplish the injury or harm upon a person other than the one intended, he is guilty of the same kind of crime as if his aim had been more accurate.

The fact that a person actually was killed instead of the intended victim is immaterial, and the only question is what

---

intent clearly did not deprive Walker of a fair trial." *Id.* at 650, 684 A.2d at 439.

would have been the degree of guilt if the result intended actually had been accomplished. The intent is transferred to the person whose death or harm has been caused.

Garrett did not object to the transferred intent instruction at trial and was subsequently convicted of two counts of first-degree murder, two counts of attempted first-degree murder, four counts of use of a handgun in the commission of a felony or crime of violence, and four counts of wearing and carrying a handgun.

On appeal to the Court of Special Appeals, in addition to challenging his convictions for first-degree murder, use of a handgun in the commission of a felony or crime of violence, and wearing and carrying a handgun on other grounds, Garrett contended that his convictions for attempted first-degree murder should be reversed because the jury instructions on transferred intent constituted plain error.[3] The State argued that plain error review was not applicable, and that even if the transferred intent instruction was erroneous, the convictions could be upheld under the doctrine of concurrent intent. The intermediate court held in an unreported opinion:

> The "plain error" doctrine, which is an exception to the general rule that an appellate court does not consider the merits of an argument that was not presented to the trial court, is limited to "compelling, extraordinary, exceptional" cases. There are two reasons why the case at bar is not such a case: (1) Ms. Taylor and Mr. Harrison suffered gunshot wounds when appellant opened fire in the Rainbow Carryout, and there are very good public policy reasons for extending the doctrine of transferred intent to situations in

---

**3.** The Court of Special Appeals upheld Garrett's convictions for first-degree murder and the convictions for use of a handgun in the commission of a crime of violence, vacated three of the four wearing and carrying a handgun convictions, and merged the fourth wearing and carrying a handgun conviction into a use of handgun in the commission of a felony or crime of violence conviction. *Garrett v. State*, No. 2979 at 5, 160 Md.App. 714 (Md.App. Dec. 10, 2004), *cert. granted*, 386 Md. 180, 872 A.2d 46 (2005). We only have been asked to review the Court of Special Appeals's judgment with respect to the attempted first-degree murder charges.

which the unintended victim is actually injured, and (2) the evidence was sufficient to establish that appellant opened fire with the intent to kill Mr. Harrison and with the "concurrent intent to kill everyone in the path of the bullets."

*Garrett v. State,* No. 2979 at 4, 160 Md.App. 714 (Md.App. Dec. 10, 2004) (citations omitted).

## II. Standard of Review

■ The issue in the case *sub judice* is whether the Court of Special Appeals abused its discretion in refusing to recognize plain error in the transferred intent jury instruction. This Court has previously stated that "[t]here is no fixed formula for the determination of when discretion should be exercised, and there are no bright line rules to conclude that discretion has been abused." *Jones v. State,* 379 Md. 704, 713, 843 A.2d 778, 784 (2004). In addition, when we review the use of discretion,

[w]e do not reverse the Court of Special Appeals for the exercise of its discretion unless it has clearly been abused. While this Court retains its own independent discretion to hear unpreserved arguments, *Squire v. State,* 280 Md. 132, 134, 368 A.2d 1019, 1020 (1977), that does not mean we review the discretionary functions of the lower appellate court *de novo.* To the contrary, we respect the judgment of the Court of Special Appeals in determining whether it needed to consider the issue for the proper execution of justice, and unless upon our review that court abused its discretion under the Rule, we will not substitute our judgment for theirs.

*Jones,* 379 Md. at 715, 843 A.2d at 784–85; *see also State v. Hutchinson,* 287 Md. 198, 204 n. 1, 411 A.2d 1035, 1038 n. 1 (1980).

## III. Discussion

■ In this case the trial judge gave a jury instruction, submitted by the State, on the theory of transferred intent. The presentation of that theory was not objected to by defense

counsel.  Shortly thereafter, *Harrison v. State*, 382 Md. 477, 855 A.2d 1220 (2004), which elucidated *Ford v. State*, 330 Md. 682, 625 A.2d 984 (1993), was filed by this Court.  The Court of Special Appeals, pursuant to our holding in *Harrison*, subsequently found that transferred intent instruction was not the correct theory of the case *sub judice*, but instead, upheld Garrett's conviction under the legal theory of concurrent intent, a theory upon which the jury was not instructed.

The theory of transferred intent is inapplicable to inchoate crimes such as attempted murder and thus, the trial court's jury instruction constituted plain error because, one, it was erroneous and two, it materially affected Garrett's fundamental right to a fair trial.  Accordingly, Garrett asserts that the Court of Special Appeals abused its discretion by failing to utilize a plain error review and by affirming his convictions for attempted first-degree murder in violation of his due process rights.  The State argues that the intermediate appellate court correctly held that plain error review was not warranted because Garrett was not unduly prejudiced by the instructional error as the theory of concurrent intent was applicable to the attempted murder charges and that there was sufficient evidence to uphold the convictions under that theory.

The present case, however, is indistinguishable, except for its result, from that of *State v. Brady*, 393 Md. 502, 903 A.2d 870 (2006), in which we held that one panel of the Court of Special Appeals did not abuse its discretion in the exercise of plain error review when that panel reversed a conviction for attempted murder after the jury had been instructed that the doctrine of transferred intent applied.[4]  Another panel of the Court of Special Appeal called upon to decide in the present case, however, refused to exercise its discretion to recognize plain error when the trial court, without objection, instructed the jury on transferred intent in an attempted murder situa-

---

4.  The *Brady* panel filed its opinion on January 12, 2004, whereas the *Garrett* panel filed its opinion on December 10, 2004.

tion, and affirmed Garrett's conviction based on the theory of concurrent intent.[5]

■ The application of *Brady* to the present case is clear, and we, therefore, reverse the Court of Special Appeals's judgment with respect to Garrett's two convictions of attempted first-degree murder because those convictions should have been reviewed under a plain error analysis rather than affirmed under the legal theory of concurrent intent, a theory that was interjected for the first time on appeal. By utilizing plain error analysis, the panel in the present case should have reversed Garrett's convictions of attempted first-degree murder after the jury had been instructed on transferred intent,

---

5. Although we acknowledge that there may be circumstances in which the exercise of appellate review warrants review of the sufficiency of the evidence utilizing a different theory than that presented at trial, and for which the jury was not instructed, to determine whether affirmance is appropriate, we believe that the present case is not one of them. In addition to constitutional conundrums that may be presented, *see McCormick v. United States*, 500 U.S. 257, 270 n. 8, 111 S.Ct. 1807, 1815 n. 8, 114 L.Ed.2d 307, 324 n. 8 (1991) ("This Court has never held that the right to a jury trial is satisfied when an appellate court retries a case on appeal under different instructions and on a different theory than was ever presented to the jury. Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury."); *Chiarella v. United States*, 445 U.S. 222, 236, 100 S.Ct. 1108, 1119, 63 L.Ed.2d 348, 362 (1980) ("[W]e cannot affirm a criminal conviction on the basis of a theory not presented to the jury."); *Dunn v. United States*, 442 U.S. 100, 107, 99 S.Ct. 2190, 2194, 60 L.Ed.2d 743, 751 (1979) ("[A]ppellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial."); *Rewis v. United States*, 401 U.S. 808, 814, 91 S.Ct. 1056, 1060, 28 L.Ed.2d 493, 498 (1971) ("[W]e need not rule on this part of the Government's theory because ... [t]he jury was not charged that it must find that petitioners actively sought interstate patronage."); *United States v. Peterson*, 236 F.3d 848, 856 (7th Cir.2001) ("Fatal to the government's appeal is that this theory was not presented to the jury, and thus, cannot support its verdict."); *United States v. Hill*, 835 F.2d 759, 764 n. 7 (10th Cir.1987) ("On appeal, a conviction cannot be sustained on a theory upon which the jury was not instructed."); *Cola v. Reardon*, 787 F.2d 681, 694 (1st Cir.1986) ("In [this] situation ... the error inheres in the appellate court affirmances; thus, the error has not yet occurred at the time of the judge's [jury instructions]."), the record reflects that the evidence may, in fact, be insufficient to support affirmance based upon the theory of concurrent intent.

for as we stated in *Brady*, "[a]s articulated in *Poe*, if a defendant intends to kill a specific victim and instead wounds an unintended victim without killing either, the defendant can be convicted only of the attempted murder of the intended victim and transferred intent does not apply." *Brady*, 393 Md. 502, 523, 903 A.2d 870, 882 (2006).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AS TO THE CONVICTIONS FOR ATTEMPTED FIRST–DEGREE MURDER; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE CONVICTIONS OF ATTEMPTED FIRST–DEGREE MURDER AND REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL ON THOSE COUNTS. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*