19 A.3d 944

Clarence **HENRY**

v.

**STATE of Maryland.**

No. 47, Sept. Term, 2009.

Court of Appeals of Maryland.

May 6, 2011.

Amy E. Brennan, Asst. Public Defender (Elizabeth L. Julian, Acting Public Defender, Baltimore, MD), on brief, for petitioner.

Jessica V. Carter, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

MURPHY, J.

In the Circuit Court for Prince George's County, a jury convicted Clarence Henry, Petitioner, of (1) the second degree murder of William Curry, who was the "intended victim" of Petitioner's senseless violence, (2) the second degree murder of Deana Bell, who was an "unintended victim" of that violence, (3) use of a handgun in the commission of a crime of violence against Mr. Curry, and (4) use of a handgun in the commission of a crime of violence against Ms. Bell. In *Henry v. State*, 184 Md.App. 146, 964 A.2d 678 (2009), the judgments entered on those verdicts were affirmed by the Court of Special Appeals. In the Petition for Writ of Certiorari filed in this Court, Petitioner presented two questions for our review:

1. Does the doctrine of transferred intent apply where both the intended victim and an unintended victim are killed?

2. Did the trial court err in refusing to instruct the jury on the lesser included offense of involuntary manslaughter as to the unintended victim where the court instructed the jury on second degree depraved heart murder?

The petition included the following reasons for granting the writ:

Prior to the Court of Special Appeals opinion in this case, there was no reported Maryland decision deciding whether the doctrine of transferred intent applies when both the intended victim and an unintended victim are killed. As to the second question presented in this petition, opinions of this Court have made clear that the difference between second degree depraved heart murder and involuntary manslaughter is a matter of the degree of negligence or recklessness, which is hard to quantify. Therefore, a jury should be instructed as to both offenses so that it may decide the accused's level of culpability.

We granted the petition. 408 Md. 487, 970 A.2d 892 (2009). For the reasons that follow, we answer "yes" to question 1, and "no" to question 2. We shall therefore affirm the judgment of the Court of Special Appeals.

## Background

In the words of its brief, "[t]he State accepts the Statement of Facts as set forth in Petitioner's Brief," in which Petitioner provided the following factual background:

On July 14, 1997, William "Jock" Curry, Ronald "Pete" Patterson and Zelma Douglas "Doug" Codray, Jr. went . . . to 3103 Good Hope Avenue, Apt. 315, the home of Alfred "Clutch" Barfield, to collect money that Barfield owed Curry.

\*      \*      \*

On the way out, the three men passed Kevin Queen, Michael "Turk" Chew, Clarence Henry and Deana Bell, on the steps. Michael Chew asked for a cigarette and Mr. Patterson gave him one. When Chew asked for a second cigarette, for his "lady friend," Mr. Curry told him to get a job and buy his own cigarettes. Michael Chew asked Mr. Patterson if the men were police officers and, as Mr. Patterson began to answer, Mr. Curry remarked, "You don't have to explain shit to him, man."

Words were exchanged and Mr. Curry threw the first punch striking Michael Chew in the face. The two began fighting and the fight moved from the steps to the parking lot. Mr. Curry, an ex-Marine who worked out at the gym four times a week, was "whupping" Michael Chew.

Kevin Queen went to the defense of Michael Chew and joined in the fist fight against Mr. Curry. Mr. Patterson came down the steps to assist Mr. Curry. Mr. Henry left and returned with a sawed-off rifle, He began shooting the rifle at Mr. Curry. He stuck him seven times, killing him. Four of the seven gunshot wounds went to Mr. Curry's back side. A bullet also struck and killed Deana Bell who was sitting on the front steps of the apartment building. The bullet, or bullets, caused two distinct wounds, one to her arm and another as the bullet entered her left chest and lodged in her heart.

Mr. Patterson took cover when Mr. Henry began shooting at Mr. Curry. It appeared to him that Mr. Henry was

"trying to place his shots" to hit Curry and "miss his buddy." Mr. Patterson described the gun as a gun metal gray sawed-off rifle with a pistol grip. It had a pump action. The gun was about two feet long with a 16 inch barrel.

(Footnotes omitted).

The record shows that the following transpired when Petitioner's trial counsel moved for judgments of acquittal at the conclusion of the State's case-in-chief:

> Count three deals with the deliberate premeditated murder of Deana Bell. I think all of the evidence thus far that the State has introduced has indicated that if you believe that Mr. Curry was the target, then you cannot believe that Miss Bell was a target of this action.
>
> \*     \*     \*
>
> What we have is no felonious homicidal intent on the part of the defendant to harm Miss Bell whatsoever.
>
> .... If ... there was no homicidal intent, the only thing you would have would be a depraved heart situation in which you are engaging in conduct which would under the circumstances, spraying of a gun causing injuries, severe injury or fatal injury, if you will, would apply—that would only apply to a second degree situation, but definitely not a first degree charge[.]

The record also shows that, after the Circuit Court delivered its jury instructions,[1] Petitioner's trial counsel stated, "[t]he only objection I would have obviously is to ... the Court ... not giving a manslaughter instruction with respect to Deana Bell, her murder."

---

1. Because Petitioner has not argued that the Circuit Court delivered an *erroneous* "transferred intent" instruction, this opinion does not include the instruction that the Circuit Court delivered. For a suggested (First and Second Degree Murder) Transferred Intent Instruction, see David E. Aaronson, *Maryland Criminal Jury Instructions and Commentary,* § 3.08 (3rd ed. Supp.2010).

## Discussion

### I.

In *United States v. Sampol*, 636 F.2d 621 (D.C.Cir.1980), the United States Court of Appeals for the District of Columbia decided the appeals of three defendants who had been convicted of murdering two persons: Orlando Letelier (the former Chilean Ambassador to the United States), and Ronni Moffitt, both of whom "were mortally wounded by the remote control detonation of a bomb attached to the undercarriage of the automobile in which they were riding." *Id.* at 629. Although it reversed the convictions and remanded for further proceedings (on the grounds that evidence against two defendants should have been excluded, and that the third defendant was entitled to a separate trial), the *Sampol* Court responded as follows to the argument that the doctrine of transferred intent was not applicable to the murder of Ms. Moffitt:

Alvin Ross and Guillermo Novo contend that their conviction for the first-degree murder of Ronni Moffitt must be reversed for lack of evidence that they intended to kill her. We reject this argument because of the doctrine of transferred intent. Under this doctrine one who intends to kill one person and kills a bystander instead is deemed to have committed whatever form of homicide would have been committed had he killed the intended victim. Wharton, Criminal Law § 144 at 197 (14th Ed.1979). **There are even stronger grounds for applying the principle where the intended victim is killed by the same act that kills the unintended victim.**

\*　　\*　　\*

A fine opinion written last year by Associate Judge Kern of the District of Columbia Court of Appeals also confirms that the doctrine of transferred intent is to be applied in the District of Columbia in first degree murder cases. *O'Connor v. United States*, 399 A.2d 21 (D.C.1979). The earlier exhaustive opinion by Judge O'Donnell of the Court of Appeals of Maryland in *Gladden v. Maryland* [, 273 Md.

383, 330 A.2d 176 (1974) ], is also a very significant contribution to the law in this area. It concludes:

> that the doctrine of "transferred intent" is the law of Maryland and that the mens rea of a defendant as to his intended victim will carry over and affix his culpability when such criminal conduct causes the death of an unintended victim.

330 A.2d at 189. The reasoning of that opinion is so sound and the authorities cited are so exhaustive that nothing remains to be done. We concur in its reasoning and its result.

*Id.* at 674–75. (Emphasis supplied).

In *Gladden, supra,* this Court explained that "the state of mind which one has when about to commit a crime upon one person is considered by law to exist and to be equally applicable although the intended act affects another person." *Id.* at 404, 330 A.2d at 188.

In that case, the petitioner shot at—but did not hit—his intended target, but one of the bullets fired by the petitioner fatally wounded the unintended victim. While affirming the petitioner's first degree murder conviction, this Court stated:

> [I]f one intends injury to the person of another under circumstances in which such a mental element constitutes *mens rea,* and in the effort to accomplish this end he inflicts harm upon a person other than the one intended, he is guilty of the same kind of crime as if his aim had been more accurate. In such cases all the components of the crime are present. The psychical element which consists of a certain general mental pattern is not varied by the particular person who may be actually harmed.

*Id.* at 404, 330 A.2d at 188.

■ Petitioner argues (in the words of his brief) that because "the *mens rea,* intent to kill, and the *actus reas,* the shooting and killing of the intended victim, Mr. Curry, came together in one crime, the doctrine of transferred intent is not applicable to the unintended death of Ms. Bell." This argument, in essence, relies upon dictum in *Ford v. State,* 330 Md.

682, 625 A.2d 984 (1993), which presented the question of whether the doctrine of transferred intent is applicable to the offense of attempted murder where there is no death.[2] Although that case did not involve the killing of both the intended victim and an unintended victim, the (four judge) majority opinion included the following dictum:

> Transferred intent does *not* make two crimes out of one. Where the crime intended has actually been committed against the intended victim, transferred intent is unnecessary and should not be applied to acts against unintended victims. The California Court of Appeal made this point clearly when reversing one of two first-degree murder convictions of a defendant who intended to kill one victim and also accidentally killed a second victim. *People v. Birreuta*, 162 Cal.App.3d 454, 208 Cal.Rptr. 635 (1984). The court said:

>> "The function of the transferred intent doctrine [in first degree murder cases] is to insure the adequate punishment of those who accidentally kill innocent bystanders, while failing to kill their intended victims. But for the transferred intent doctrine, such people could escape punishment for murder, even though they deliberately and premeditatedly killed—because of their 'lucky' mistake. The transferred intent doctrine is borne of the sound judicial intuition that such a defendant is no less culpable than a murderer whose aim is good. It insures that such a defendant will not be allowed to defend against a murder charge by claiming to have made a mistake of identity, a poor aim or the like.

>> When the intended victim is killed, however, there is no need for such an artificial doctrine. The defendant's

---

**2.** In *Ford*, this Court was unanimous in its conclusion that the answer to that question is "no." In *Harrison v. State*, 382 Md. 477, 855 A.2d 1220 (2004), this Court reaffirmed the proposition "that the doctrine of 'transferred intent' does not support the conviction [of attempted second degree murder of an *unintended* victim] because 'transferred intent' may not be applied to prove attempted murder." *Id.* at 480, 855 A.2d at 1222.

premeditation, deliberation, intent to kill and malice aforethought are all directly employable in the prosecution for murdering his intended victim. The accidental killing may thus be prosecuted as a manslaughter or second degree murder without ignoring the most culpable mental elements of the situation. There is no danger that a premeditated killing will go unpunished or be treated as a manslaughter because the murder of the intended victim will presumably be the subject of prosecution."

*Id.* at 460, 208 Cal.Rptr. at 638–39.

330 Md. at 712–13, 625 A.2d at 998–99.

In a concurring opinion joined by Judges Rodowsky and Karwacki, Judge McAuliffe explained why he would "excise" that dictum:

The Court cites three decisions of California Courts of Appeal in support of the second limitation. A California case not cited by the majority, *People v. Carlson,* 37 Cal. App.3d 349, 112 Cal.Rptr. 321 (1974), appears to be to the contrary. In that case, the defendant killed his pregnant wife under circumstances sufficient to support a finding of manslaughter. Although the defendant may have had no intention to kill the unborn child his wife was carrying, the California court found that he would be criminally liable for his wife's death and the death of the fetus under the doctrine of transferred intent. *Id.* at 325. The rationale of the *Carlson* case was adopted and approved by the Court of Appeals of Michigan in *People v. Lovett,* 90 Mich.App. 169, 283 N.W.2d 357, 360 (1979). In 1989, the Supreme Court of California referred to two of the cases cited by the majority, and to *Carlson,* stating that although it had approved the rule of transferred intent in cases involving homicides, the court had not considered application of the doctrine where both the intended and the unintended victims were killed or injured. *People v. Hunter,* 49 Cal.3d 957, 264 Cal.Rptr. 367, 379, 782 P.2d 608, 620 (1989).

Other courts have taken a different view of the applicability of the doctrine of transferred intent where both the

intended and unintended victims were injured or killed. In *State v. Worlock*, 117 N.J. 596, 569 A.2d 1314 (1990), the Supreme Court of New Jersey rejected the defendant's argument that it should follow the rationale of the California courts relied upon by the majority here. The court said:

> When a defendant contemplates or designs the death of another, the purpose of deterrence is better served by holding that defendant responsible for the knowing or purposeful murder of the unintended as well as the intended victim. Hence, we reject defendant's argument that the successful killing of the intended victim prevents the 'transfer' of that intent to an unintended victim.

*Id.* at 1325. The New Jersey court also noted that federal courts have likewise applied the principle of transferred intent in cases where the intended victim is killed by the same act that kills the unintended victim, citing *United States v. Sampol*, 636 F.2d 621, 674 (D.C.Cir.1980), and *United States v. Weddell*, 567 F.2d 767, 769–70 (8th Cir. 1977), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 761 (1978). *Id.*

330 Md. at 724–25, 625 A.2d at 1004–05.

In *State v. Worlock, supra,* while expressing disagreement with *Birreuta,* the New Jersey Supreme Court stated:

> The critical consideration in determining the degree of murder for which the defendant could be liable was his or her state of mind, "and not the measure of success that attended its accomplishment." *State v. Becsta* [*Bectsa* ], 71 N.J.L. 322, 326–27, 58 A. 933 (E. & A.1904). When a defendant intentionally shoots at one victim but kills another, his punishment should be consistent with his intent and not his bad aim.

> \*   \*   \*

Defendant, however, urges that the "transferred intent" doctrine should not apply when both the intended and unintended victim are killed. He asserts that his success in purposely killing [the intended victim] limits his exposure for the death of [the unintended victim] to reckless man-

slaughter. This argument proceeds from the assumption that the only purpose of N.J.S.A. 2C:2–3d is to insure that an actor who succeeds in knowingly or purposely causing harm, albeit not to the intended victim, should be punished consistent with his culpability.

\* \* \*

We find nothing in the legislative history or plain language of N.J.S.A. 2C:2–3d that would limit the application of the statute to a situation in which only the unintended victim is harmed. To the contrary, we believe that the Legislature intended the statute to serve as a strong deterrent to those contemplating injury to another. **When a defendant contemplates or designs the death of another, the purpose of deterrence is better served by holding that defendant responsible for the knowing or purposeful murder of the unintended as well as the intended victim. Hence, we reject defendant's argument that the successful killing of the intended victim prevents the "transfer" of that intent to an unintended victim.**

569 A.2d at 1325. (Emphasis supplied).

In *State v. Hinton,* 227 Conn. 301, 630 A.2d 593 (1993), while rejecting the argument that "intent to kill may not be transferred to an unintended victim if the intended victim is also killed," the Connecticut Supreme Court stated:

Human beings are not fungible. Therefore, a separate injury to each constitutes a separate crime, and the law does not give the defendant a discount on the second and subsequent victims of his intentional conduct. *See State v. Lytell,* 206 Conn. 657, 666, 539 A.2d 133 (1988). Viewed through this prism, it is clear that, as to each person killed, the defendant had the "intent to cause the death of another person," and, acting with that intent, he "caused the death of ... a third person...." General Statutes § 53a–54a. Thus, although the traditional formulation of the doctrine of transferred intent is usually stated in singular terms; see

footnote 8; that does not mean that such intent, once employed, is thereby totally expended.

      \*      \*      \*

Finally, the defendant urges this court to follow *People v. Birreuta*, 162 Cal.App.3d 454, 208 Cal.Rptr. 635 (1984), in which the California Appellate Court for the fifth district held that if a defendant kills both an intended and an unintended victim, the doctrine of transferred intent may not be applied to make the unintended killing a murder. Our research reveals that other jurisdictions that have considered this issue, however, have reached the opposite conclusion. *See, e.g., United States v. Sampol*, 204 U.S.App. D.C. 349, 636 F.2d 621, 674 (D.C.Cir.1980); *United States v. Weddell*, 567 F.2d 767, 769–70 (8th Cir.1977), cert. denied, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 761 (1978); *State v. Worlock*, 117 N.J. 596, 569 A.2d 1314 (1990). We find these other cases more persuasive.

630 A.2d at 598–99.

As the Court of Special Appeals noted in *Henry*,[3] "[*Birreuta*] has since been disapproved by the Supreme Court of California by *People v. Bland*, [28 Cal.4th 313, 121 Cal.Rptr.2d 546, 48 P.3d 1107 (2002)]." In *Bland*, while holding that transferred intent does not apply to the crime of attempted murder,[4] the Supreme Court of California stated:

---

**3.** 184 Md.App. at 158 n. 6, 964 A.2d at 685 n. 6.

**4.** The *Bland* Court cited with approval *State v. Hinton, supra, State v. Worlock, supra, United States v. Sampol, supra,* and *Harvey v. State,* 111 Md.App. 401, 681 A.2d 628 (1996), in which the Court of Special Appeals stated:

Criminal acts, consummated or inchoate, are discrete events that can be both pinpointed and counted. A mens rea, by contrast, is an elastic thing of unlimited supply. It neither follows nor fails to follow the bullet. It does not go anywhere. It remains in the brain of the criminal actor and never moves. It may combine with a single actus reus to make a single crime. It may as readily combine with a hundred acti rei, intended and unintended, to make a hundred crimes, consummated and inchoate. Unforeseen circumstances may multiply the criminal acts for which the criminal agent is responsible.

There is some force to *Birreuta's* argument that a person who intends to kill two persons and does so is more culpable than a person who only intends to kill one but kills two. But we find no legally cognizable difference between the two persons.... "Contrary to what its name implies, the transferred intent doctrine does not refer to any actual intent that is capable of being 'used up' once it is employed to convict a defendant of a specific intent crime against the intended victim."

Similarly, a person's intent to kill the intended target is not "used up" once it is employed to convict the person of murdering that target. It can also be used to convict of the murder of others the person also killed.

\* \* \*

Whether one conceptualizes the matter by saying that the intent to kill the intended target transfers to others also killed, or by saying that intent to kill need not be directed at a specific person, the result is the same; assuming legal causation, a person maliciously intending to kill is guilty of the murder of all persons actually killed. If the intent is premeditated, the murder or murders are first degree.

\* \* \*

**We conclude that** *People v. Birreuta, supra,* 162 Cal. App.3d 454, 208 Cal.Rptr. 635, **was incorrect and disapprove it to the extent it is inconsistent with our opinion. Intent to kill transfers to an unintended homicide victim even if the intended target is killed.**

*Id.* at 1113–15. (Footnotes omitted. Emphasis supplied).

We agree with the Supreme Courts of California, Connecticut, and New Jersey, as well as with the above cited federal courts, that the doctrine of transferred intent is fully applicable where both the intended victim and an unintended victim

---

A single state of mind, however, will control the fact of guilt and the level of guilt of them all.
111 Md.App. at 419–20, 681 A.2d at 637.

are killed.[5]   This conclusion is entirely consistent with our holding in *Poe v. State,* 341 Md. 523, 671 A.2d 501 (1996), in which we answered "yes" to the question of "whether the doctrine of transferred intent applies when a defendant, intending to kill one person, shoots and wounds that person, but the shot passes through the intended victim and kills an unintended victim." *Id.* at 525, 671 A.2d at 502.   In that case, the petitioner shot at—and wounded—his estranged wife, but the bullet that hit her passed through her arm and fatally wounded the unintended victim who had been standing behind her. *Id.* at 526, 671 A.2d at 502.   While affirming the petitioner's conviction of first degree murder of the unintended victim, as well as his conviction for the attempted first degree murder of his wife, this Court stated:

> Essentially, Mr. Poe argues that because he intended to and did shoot Ms. Poe and was convicted of her attempted murder, there is no intent left to transfer to ... the unintended victim.   The defendant contends that he "used up" all of his intent on Ms. Poe, his targeted victim.
>
> \*       \*       \*
>
> We do not agree.   The defendant is correct that "the crime of attempted murder [of Ms. Poe] was complete" when he fired the shotgun at her.   The defendant fails to recognize, however, that his intent was to murder, not to attempt to murder.   Since Mr. Poe killed [the unintended victim], his intent to murder was "transferred" from Ms. Poe to [the unintended victim].   We agree with the State that the passing of the bullet through the arm of the intended victim before killing the unintended victim does not alter or negate the application of the doctrine of trans-

---

**5.**   We do agree with Petitioner that this Court should not affirm his conviction on the ground that he had a "concurrent intent to kill everyone in the path of the bullets." *Ford v. State,* 330 Md. 682, 718, 625 A.2d 984, 1001 (1993).   In *Garrett v. State,* 394 Md. 217, 905 A.2d 334 (2006), this Court reversed "two convictions of attempted first-degree murder because those convictions should have been reviewed under a plain error analysis rather than affirmed under the legal theory of concurrent intent, a theory that was injected for the first time on appeal." *Id.* at 226, 905 A.2d at 340.

602

ferred intent. A *fortiori,* this is a classic case of transferred intent.

*Id.* at 528–29, 671 A.2d at 503.

■ For the reasons stated above, we hold that the doctrine of transferred intent is applicable to the killing of an unintended victim even if the intended victim was also killed, and we disapprove of the dictum to the contrary in *Ford v. State, supra.*

## II.

As Petitioner has conceded, if this Court's answer to his first question is "yes," he was not entitled to a jury instruction on the lesser included offense of involuntary manslaughter as to the unintended victim.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

