Filed 9/25/15  P. v. Edwards CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW EDWARDS,<br><br>Defendant and Appellant. | F067823<br><br>(Super. Ct. No. MCR033982)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and John A. Bachman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

During a car chase, Matthew Edwards fired many shots at several pursuing police cars.  He was convicted of four counts of attempted murder, four counts of assault with a firearm, one count of being a felon in possession of a firearm, and one count of stealing a

car.  He now argues:  (1) the evidence was insufficient to prove two of the counts of attempted murder and two of the counts of assault with a firearm because the victims of those counts were not in the police cars leading the chase at the time Edwards fired, but were instead in police cars in the second position at the relevant times; and (2) the car-theft conviction must be reversed because it was not included in the complaint, and evidence showing car theft was not presented at the preliminary hearing.

The first argument is without merit, but the second is correct.  We will reverse the car-theft conviction and otherwise affirm the judgment.

## *FACTS AND PROCEDURAL HISTORY*

Edwards was the passenger in a Plymouth Neon in Madera at 3:45 a.m. on December 28, 2008.  Madera Police Officer John Palazzola saw the Neon leave a 7-11 store and followed it.  He watched while it straddled lanes at a traffic light and exceeded the speed limit, among other things.  When he tried to pull it over, it sped away, driving past a stop sign at 80 miles per hour.

A chase from Madera to Fresno, covering more than 40 miles, ensued.  Several law enforcement agencies were involved.  Among the officers participating in the chase, driving four separate police cars, were Madera Police Officers Palazzola, Jason Green, Josh Chavez, and Juan Gaona.  While these officers were following the Neon, the passenger pointed a handgun out the window and fired it repeatedly at the police cars.  Palazzola saw at least seven muzzle flashes and heard five shots.  Chavez saw three muzzle flashes and heard three shots.

The car chase ended when the Neon drove over a curb and crashed into a lamppost.  The passenger and driver got out and ran, jumping over a wall to enter an apartment complex.  Fresno Police Officer Jonathan Linzey caught up with the passenger, Edwards, inside the complex and arrested him.

The parties stipulated that Edwards had taken the Neon from its owner without consent.  The ignition switch had been damaged, as though someone had forced a

2.

screwdriver into it. A screwdriver was found on the front seat. Edwards had a prior felony conviction for methamphetamine possession.

The district attorney filed an information charging Edwards with 10 counts. Counts 1 through 4 charged Edwards with the willful, deliberate, and premeditated attempted murders of police officers, namely Palazzola, Green, Chavez, and Gaona, respectively. (Pen. Code,[1] §§ 187, 664, subds. (e), (f).) Counts 5 through 8 charged Edwards with assault with a firearm against the same four officers. (§ 245, subd. (d).) Count 9 charged Edwards with being a felon in possession of a firearm. (Former § 12021, subd. (a)(1).) Count 10 charged Edwards with taking the Neon without consent of the owner. (Veh. Code, § 10851, subd. (a).) In connection with counts 1 through 8, the information alleged, for sentence-enhancement purposes, that Edwards personally and intentionally discharged a firearm (§ 12022.53, subd. (c)) and personally used a firearm (§§ 12022.5, subds. (a), (d), 12022.53, subd. (b)).

The jury found Edwards guilty as charged and found the enhancement allegations true. The court sentenced him to a total of 60 years to life plus 83 years 8 months, calculated as follows: 15 years to life for each attempted-murder conviction; a 20-year enhancement on each attempted murder count for personally and intentionally discharging a firearm; three years for being a felon in possession of a firearm; and eight months for stealing the car. The sentences for the remaining counts and enhancements were stayed under section 654.

## DISCUSSION

### I.     Sufficiency of evidence for counts 2, 4, 6, and 8

Edwards argues that the evidence was insufficient to prove counts 2, 4, 6, and 8— the offenses against Green and Gaona—because their cars were positioned during the chase in a way that bars an inference that Edwards was shooting at them. He admits the

---

[1]Subsequent statutory references are to the Penal Code unless otherwise noted.

evidence was sufficient to prove the offenses against Palazzola and Chavez, whose cars were first in line behind the Neon at different times. The cars of Green and Gaona were never further ahead than second in line. Edwards says the lead cars would have blocked the line of fire from the Neon to Green and Gaona.

When considering a challenge to the sufficiency of the evidence to support a judgment, we review the record in the light most favorable to the judgment and decide whether it contains substantial evidence from which the finder of fact could make the necessary finding beyond a reasonable doubt. We presume every inference in support of the judgment that the finder of fact reasonably could have made. We do not reweigh the evidence or reevaluate witness credibility. We cannot reverse a judgment merely because the evidence could be reconciled with a contrary finding. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.)

The officers gave testimony at trial relevant to the way the police cars were positioned behind the Neon when the shots were being fired. Palazzola described three sets of shots. The first set, three shots, took place while Palazzola was pursuing the Neon west on Avenue 13 in Madera County, near Road 28. Palazzola's was the only police car chasing at that point. The Neon continued east on Avenue 13 to State Route 145 and turned south. Other police cars joined the chase behind Palazzola on State Route 145 south of Avenue 12. The pursuit continued to the point where State Route 145 crosses the San Joaquin River and enters Fresno County. At this point, the road curved to the right (i.e., the west) as the chase proceeded south. As the Neon took the curve ahead of Palazzola, Palazzola had a view of the Neon's right side. The passenger fired the second volley at this time, consisting of at least two shots. The Neon continued south on State Route 145 to Shaw Avenue, where it turned east and headed toward State Route 99. At the Shaw Avenue on-ramp, it entered State Route 99 southbound. Palazzola testified that the passenger fired a third volley of at least two shots while Palazzola and the Neon were both in the center lane of the highway. Palazzola was about 150 yards behind, and the

4.

cars were going 100 to 110 miles per hour.  The Neon exited State Route 99 at Princeton Avenue in Fresno.  Palazzola was going too fast to track the Neon's line after it exited, and the other police cars passed him and continued the pursuit.  Palazzola rejoined the chase as the last car.  He followed to the point where the chase ended, an apartment complex at Cedar Avenue and Teague Avenue in Fresno.

Green testified that he responded to Palazzola's radio call and headed down State Route 145, catching up with Palazzola around Avenue 12.  While on State Route 145, Green's was the second police car in the line, about 30 to 50 feet behind Palazzola.  Around Avenue 6, close to the point where the highway crosses the river, Palazzola braked and swerved to the left.  At that point, Palazzola was still ahead of Green, but not positioned between Green and the Neon, so the Neon was directly ahead of Green's car.  Subsequently, Green also steered to the left, with the intention of avoiding being shot.  When the Neon turned off of State Route 145 onto Shaw Avenue, Green was still second behind Palazzola.  Later, when the Neon exited State Route 99 at Princeton Avenue, Green failed to react in time and missed the exit.  He rejoined the pursuit after this, but was further back in line.  Eventually, he lost sight of the pursuit and broke off around Clinton Avenue and Weber Avenue.  Green never saw or heard the gunshots.  He inspected his car later and found no indications that it had been hit by bullets.

Chavez testified that he, like Green, responded to Palazzola's radio call and joined the chase on State Route 145 south of Avenue 12, where he became the third police car in line, behind Palazzola and Green.  South of Avenue 12, around Avenue 7, he saw Palazzola's car veer to the left.  The pursuit continued down State Route 145 to Shaw Avenue and then to State Route 99.  Chavez was still third in line when the Neon exited State Route 99 at Princeton Avenue.  At that point, however, Palazzola and Green both missed the exit and Chavez became the lead police car.  The Neon proceeded south on Parkway Drive.  As Chavez followed at a distance of 80 to 100 feet, the passenger in the Neon leaned out of the window and fired a fourth volley in Chavez's direction, consisting

5.

of three shots. Chavez reacted by briefly veering off the road to the left. The Neon then turned east on Clinton Avenue. Chavez followed as far as Cedar Avenue, where the Fresno Police Department took over the pursuit. Chavez believed there was no one else around him or behind him when the shots were fired.

Gaona testified that he too joined the pursuit on State Route 145 south of Avenue 12 and became the fourth police car behind Palazzola, Green, and Chavez. As the cars rounded the right-hand curve at the river, Palazzola made a movement to the left. At this time, Gaona heard a noise he thought could be bullets hitting his car, but he inspected the car later and found no damage. Later, when the Neon exited State Route 99 at Princeton Avenue and Palazzola and Green missed the exit, Gaona was involved in a collision with Green and another car. Gaona then continued and became the second car in the pursuit behind Chavez. When Gaona was about 10 to 15 yards behind Chavez, Chavez veered to the left. Gaona veered to the left as well, to avoid being shot. Defense counsel, cross-examining Gaona, pointed out that Chavez had testified that no one was behind him when the Neon's passenger fired shots after the Neon exited State Route 99 at Princeton Avenue. Gaona, however, stood by his testimony that he was there.

A charge of attempted murder requires proof that the defendant intended to kill a victim and took a direct but ineffectual step toward accomplishing the killing. (*People v. Perez* (2010) 50 Cal.4th 222, 229 (*Perez*).) If the defendant is charged with multiple counts of attempted murder, his guilt is determined separately for each victim. (*People v. Bland* (2002) 28 Cal.4th 313, 331 (*Bland*).) Nevertheless, "a generalized intent to kill someone" as opposed to a specific target is sufficient, because an "indiscriminate would-be killer is just as culpable as one who targets a specific person." (*People v. Stone* (2009) 46 Cal.4th 131, 136, 140.) Further, the indiscriminate nature of a defendant's act or acts can support an inference that the defendant had concurrent intentions to kill multiple victims, even if the evidence also shows that he had a specific primary victim in mind. Our Supreme Court so held in *Bland*, *supra*, in which it adopted the reasoning of *Ford v.*

6.

*State* (Md. 1993) 625 A.2d 984, overruled on other grounds by *Henry v. State* (Md. 2011) 19 A.3d 944, 952:

> "'The intent is concurrent … when the nature and scope of the attack, while directed at a primary victim, are such that we can conclude the perpetrator intended to ensure harm to the primary victim by harming everyone in that victim's vicinity.  For example, an assailant who places a bomb on a commercial airplane intending to harm a primary target on board ensures by his method of attack that all passengers will be killed.  Similarly, consider a defendant who intends to kill A and, in order to ensure A's death, drives by a group consisting of A, B, and C, and attacks the group with automatic weapon fire or an explosive device devastating enough to kill everyone in the group.  The defendant has intentionally created a "kill zone" to ensure the death of his primary victim, and the trier of fact may reasonably infer from the method employed an intent to kill others concurrent with the intent to kill the primary victim.'" (*Bland, supra*, 28 Cal.4th at pp. 329-330 [quoting *Ford v. State, supra*, 625 A.2d at pp. 1000-1001].)

To obtain a conviction on the basis of this approach, the prosecution need not use the words "'"kill zone."'"[2]  (*Bland, supra*, 28 Cal.4th at p. 330.)  It is enough that the defendant intend to kill anyone who happens to be in the targeted area and that he employ the means able to accomplish this.  Examples (cited in *Bland, supra*, at p. 330) include *People v. Vang* (2001) 87 Cal.App.4th 554, 563-565 (defendants fired many shots through walls of two houses, unable to see all people inside; 11 convictions of attempted murder, covering all persons inside, affirmed, although defendants targeted only one person in each house) and *People v. Gaither* (1959) 173 Cal.App.2d 662, 666-667 (defendant mailed poisoned candy to residence in effort to kill his wife; convictions upheld for administering poison with intent to kill all who lived at residence).  Other examples include *People v. Smith* (2005) 37 Cal.4th 733, 736-737, 744 (defendant with

___

[2]In explaining that a "kill zone" case need not be called by that name by the prosecution, the *Bland* court also stated that "[t]his concurrent intent theory is not a legal doctrine requiring special jury instructions," but is "simply a reasonable inference the jury may draw in a given case." (*Bland, supra*, 28 Cal.4th at p. 331, fn. 6.)  A pattern jury instruction on the kill zone theory (a portion of CALCRIM No. 600) exists, but was not given in this case.

grudge against woman fired single shot into car, narrowly missing woman and her baby; convictions of attempting to murder mother and baby affirmed), and *Bland, supra,* at pages 318-319, 331-333 (multiple shots fired into car killed driver, who was primary target, and injured two passengers; defendant guilty of attempted murders of passengers because he had concurrent intent to kill them along with driver). From these authorities, it follows that a defendant can be guilty of the attempted murders of two or more people if he fires multiple shots toward them, intending to kill as many as he might hit.

In light of these principles, the jury in this case could reasonably infer that Edwards intended to kill Green and Gaona even though they were not driving the first police car in line at the times when the shots were fired. Edwards fired his second volley, consisting of two shots, as the Neon rounded the rightward curve on State Route 145 at the San Joaquin River. The curve meant the jury could reasonably find there was a clear line, at this point in the chase, from the Neon not only to Palazzola's car but to the cars behind as well. And Palazzola pulled to the left, further exposing the trailing vehicles. Green testified that Palazzola's movement created an unimpeded line between Green and the Neon. The evidence supported a finding that there was no obstacle between the Neon and (at least ) Green, who was in the second position, when Edwards fired the second volley.

Edwards fired the fourth volley—three more shots—on Parkway Drive, after the Neon exited State Route 99, while Chavez was leading the pursuit and Gaona was second. Chavez said he veered off the road to the left when Edwards fired. Chavez believed no other police cars were behind him when this happened, but Gaona testified that his car was there. The jury could reasonably accept Gaona's version and find that Edwards had a clear shot at Gaona at that point.

In sum, the evidence in this case reasonably supported findings that, at the times of the second and fourth volleys, Edwards was shooting toward (at least) two victims—Palazzola and Green during the second volley, and Chavez and Gaona during the fourth

8.

volley—with the intent to kill as many as he might hit. Under the case law discussed above, these findings could support all four attempted-murder convictions.

Edwards contends the evidence was insufficient because the line of fire between the Neon and Green and between the Neon and Gaona was "blocked" by the cars of Palazzola and Chavez, and because Green and Gaona did not see or hear the gunfire. As we have said, there is substantial evidence that the line of fire was not blocked when the second and fourth volleys were fired. That Green and Gaona did not perceive the shots as they were fired is immaterial. The curve in State Route 145, along with the veering movements by Palazzola and Chavez, provided common points of reference on which the jury could rely in finding that the times when Green and Gaona were exposed were also the times when Palazzola and Chavez saw and heard the shots.

Edwards relies on *Perez, supra,* 50 Cal.4th 222 and *People v. Virgo* (2013) 222 Cal.App.4th 788 (*Virgo*), but those cases do not help him. Perez fired a single shot from a moving car, at a distance of 60 feet, toward a group of eight people (seven police officers and a civilian), who were standing fewer than 15 feet from each other in a dimly lighted parking lot. The bullet injured one officer's hand. No one else was hit. Perez was convicted of eight counts of attempted murder. Our Supreme Court held that, under these circumstances, the evidence supported only one count. (*Perez*, *supra*, at p. 224.) Although the evidence supported a finding that Perez intended to kill any person the one shot might hit, he did not use "a means of force calculated to kill everyone in the group." Consequently, the jury could not reasonably infer an intent to kill multiple victims. (*Id.* at p. 225.) The single shot might have endangered all eight people, but the Supreme Court rejected the proposition that, "to the extent shooting a single bullet at a group of persons endangers them all, the shooter may be found guilty of the attempted murder of every individual in the group on that basis alone." (*Id.* at p. 231.)

In *Virgo*, the Court of Appeal cited *Perez* and reversed 5 out of 10 convictions of attempted murder. Virgo was barricaded inside a house and fired multiple shots at

9.

officers surrounding the house. One group of four officers heard four to seven shots coming from the house and passing near them as they took cover by a parked car. The court held that this evidence supported four counts of attempted murder. (*Virgo, supra*, 222 Cal.App.4th at p. 799.) A group of three more officers saw one shot come toward them from the house. Their testimony supported only one more count, not three. (*Ibid.*) The remaining three officers provided no evidence of having been fired on. The evidence did not support Virgo's convictions of attempting to murder them. (*Id.* at p. 800.)

The present case is not similar to *Perez* or *Virgo*. In *Perez*, eight counts were based on a single shot. Here, the second volley was two shots and the fourth was three. Edwards was convicted of four counts based on these five shots, two counts for each volley. The jury could reasonably find that the multiple shots constituted enough force to kill two victims in each instance and that Edwards intended to kill each victim. In *Virgo*, similarly, 5 of the 10 counts were reversed because one volley consisted of only one shot directed at three officers and there was no evidence of any shots at all fired toward a second group.

For all these reasons, we reject Edwards's argument that substantial evidence does not support his attempted murder convictions on counts 2 and 4. We turn now to his argument that substantial evidence does not support his convictions of assault with a firearm on counts 6 and 8.

To prove assault, a prosecutor must establish (1) the defendant willfully committed an act of which the application of physical force to another person was a probable direct consequence; (2) the defendant actually knew the facts showing the application of physical force to another person was a probable direct consequence of the act; and (3) at the time of the act, the defendant had the ability to apply physical force to another person. (*People v. Williams* (2001) 26 Cal.4th 779, 783-784; *People v. Trujillo* (2010) 181 Cal.App.4th 1344, 1350-1352; see CALCRIM No. 915.) To prove a violation of section 245, subdivision (d), the prosecution also had to prove Edwards committed

10.

each assault with a firearm and that, as Edwards knew or reasonably should have known, each victim was a police officer performing his duties.

Edwards contends that "there was no probability that [his] firing at one police car would directly result in an injury to an officer in a second police car, because the first police car acted as an effective shield for the second police car," and therefore he was not proved guilty of assaulting Green and Gaona. For the reasons stated in the discussion of attempted murder above, however, Edwards is mistaken in his view that the jury had to find the cars of Green and Gaona were blocked by the cars of Palazzola and Chavez at the times when Edwards was shooting. There was substantial evidence on the basis of which the jury could find that, during the second and fourth volleys of shots, there was a clear line between the Neon and Green's and Gaona's cars, respectively. We reject Edwards's argument for this reason.

## II.     *Failure to present evidence of car theft at preliminary hearing*

Edwards contends that the conviction on count 10 for stealing the Neon must be reversed because that offense was not included in the complaint, and sufficient evidence of it was not presented at the preliminary hearing. On this issue, the facts are not in dispute, so we review de novo the legal question of whether Edwards could properly be tried for an offense not shown by the evidence at the preliminary hearing. (*People v. Cromer* (2001) 24 Cal.4th 889, 894 [appellate court reviews determinations of law de novo].) We agree with Edwards.

The complaint included only nine counts and did not contain any reference to vehicle theft or Vehicle Code section 10851. At the preliminary hearing, Palazzola testified that, when the chase was over, he saw a screwdriver on the driver's seat of the Neon and "saw the ignition like it had been punched or damaged." No other evidence relevant to a vehicle-theft charge was presented at the preliminary hearing. The People do not argue that Palazzola's remarks would have been a sufficient basis to hold Edwards to answer a charge of violating Vehicle Code section 10851.

11.

The California Constitution requires examination and commitment by a magistrate as a prerequisite to the prosecution of a felony by information. (Cal. Const., art. I, § 14.) On this basis, it has been held that a defendant cannot be prosecuted by information "in the absence of a prior determination of a magistrate … that such action is justified." (*Jones v. Superior Court* (1971) 4 Cal.3d 660, 666.) It follows that "a defendant may not be prosecuted for an offense not shown by the evidence at the preliminary hearing or arising out of the transaction upon which the commitment was based." (*People v. Burnett* (1999) 71 Cal.App.4th 151, 165-166.) Statutes are in conformity with these principles. Section 739 provides that, after a defendant has been committed following a preliminary hearing, the district attorney has a duty to file an information that "may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate …." Section 1009 provides that an information cannot be amended "to charge an offense not shown by the evidence taken at the preliminary examination." Based on all this, one court has referred to the "clear illegality" of convicting a defendant of an offense different from and not transactionally related to any shown by the evidence at the preliminary hearing. (*Burnett, supra*, at p. 178.)

The People argue that Edwards has forfeited this issue because he did not raise it in the trial court. Edwards maintains that the trial court lacked jurisdiction to try him for an offense not shown by the evidence at the preliminary hearing, so objection was unnecessary to preserve the issue for appeal. The People contend that, although the trial court might have acted in excess of its jurisdiction, its action was nevertheless not void but only voidable, so the doctrine of forfeiture still applies. Edwards maintains that if this is so, then his trial counsel rendered ineffective assistance by not objecting, and the conviction should be reversed for that reason. The People assert that ineffective assistance of counsel has not been established because Edwards's trial counsel could have had a sound reason for not objecting and because the failure to object did not prejudice

12.

Edwards. The alleged sound reason was that objecting would have been "pointless" because Edwards "had notice before trial of the evidence upon which the count was based." There was no prejudice, according to the People, because Edwards "was fully aware of what he had to defend against, and he ultimately elected to stipulate to the basis for the count."

We need not decide the questions of whether an objection was required to preserve the issue for appeal and whether defense counsel rendered ineffective assistance by not objecting. Instead, we will assume for the sake of argument that the issue was forfeited and will exercise our discretion to review a forfeited issue. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7 [appellate court has discretion to review forfeited claim]; *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [same].)

We turn to the merits. The trial court's error—allowing Edwards to be tried and convicted on a charge not shown by the evidence at the preliminary hearing—is straightforward. In fact, the People do not deny this was error: They do not dispute the proposition that Edwards could not properly be tried for an offense not shown by the evidence at the preliminary hearing, and they do not claim the evidence at the preliminary hearing provided a basis for holding Edwards to answer a charge of vehicle theft. They do argue that Edwards was not prejudiced by the inclusion of the vehicle-theft count in the information, but their argument is not persuasive. They say he knew of the evidence that he stole the Neon and must have believed it was compelling because he stipulated to a basis for the charge; consequently, his ability to present a defense must not have been impaired by the failure of the preliminary hearing transcript to give notice of the charge. The People cite no authority, however, for the notion that the error of convicting a defendant on a charge not substantiated at the preliminary hearing is harmless unless the defendant shows he had no notice of the evidence presented at trial. Without the error of including count 10 in the information, Edwards could not have been convicted of vehicle

theft in this prosecution at all, and the People do not suggest that a separate prosecution would have been instituted.  We conclude the error was prejudicial.

### *DISPOSITION*

The conviction on count 10 is reversed.  The judgment is affirmed in all other respects.

_____

Smith, J.

WE CONCUR:


_____

Kane, Acting P. J.


_____

Peña, J.